**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Rashmi R. KANT, Defendant–Appellee.**

**No. 91–5269.**

United States Court of Appeals,
Fourth Circuit.

Argued July 11, 1991.

Decided Sept. 26, 1991.

William Graham Otis, Senior Litigation Counsel, Office of U.S. Atty., Alexandria, Va., argued (Henry E. Hudson, U.S. Atty., Mark Hulkower, Asst. U.S. Atty., Office of U.S. Atty., on brief), for plaintiff-appellant.

Robert Powel Trout, Dunnells, Duval & Porter, Washington, D.C., argued, for defendant-appellee.

Before WILKINSON, WILKINS and NIEMEYER, Circuit Judges.

## OPINION

WILKINSON, Circuit Judge:

Rashmi R. Kant pleaded guilty to conspiracy to bribe a public official in violation of 18 U.S.C. § 371. Kant signed a plea agreement that stipulated that he and two cohorts had conspired to pay $400,000 to a United States Maritime Administration (MARAD) official for the opportunity to purchase a ship for substantially less than its market value. The district court calculated Kant's adjusted offense level on the basis of the $400,000 amount of the bribe and sentenced Kant to a term of 18 months. The government appeals, arguing that under the United States Sentencing Guidelines the adjusted offense level in this case should have been calculated on the basis of the benefit to be received from the bribe, rather than the lower figure representing the amount of the bribe. We agree, vacate the sentence of the district court, and remand the case for resentencing.

## I.

On July 30, 1990, Rashmi Kant and Laxmi Chand met with a MARAD official to discuss the purchase of MARAD vessels on behalf of Hariyana Ship–Breakers and its Managing Director, O.M. Agarwal. After a series of meetings with the MARAD official and telephone conversations with Agarwal, the parties agreed on a scheme for the purchase of the vessel *Stuyvesant.* Kant, Chand, and Agarwal agreed to pay $400,000 to the MARAD official. In exchange, the MARAD official, who was by this time working with the F.B.I. and recording the conspirators' conversations with him, promised to ensure the sale of the *Stuyvesant* to Agarwal, a vessel worth between $6 and $8 million on the open market, for $3 million.

On September 20, 1990, Kant, Chand, Agarwal, and the MARAD official met to discuss the details of the purchase of the *Stuyvesant* and payment of the bribe. Kant, Chand, and Agarwal agreed to pay the $3 million purchase price with a certified check payable to MARAD and to pay the bribe with $21,000 in cash and certified checks in the amount of $9,000 each. The three conspirators paid about half of the bribe on September 24 and delivered the $3 million check on September 26. The balance of the bribe was to be paid upon delivery of the *Stuyvesant* to Agarwal.

After the delivery of the $3 million, F.B.I. agents arrived and arrested the three conspirators. Kant pleaded guilty to conspiracy to bribe a public official in violation of 18 U.S.C. § 371. At issue during sentencing was the appropriate calculation of the adjusted base offense level. The government argued that the court should use the $3 to $5 million figure representing the benefit received from the bribe because that figure exceeded the $400,000 amount of the bribe. Although Kant had stipulated in his plea agreement that the net benefit from the bribery scheme was between $3 and $5 million, the district court held that there was insufficient evidence of the benefit received from the bribe and therefore calculated the adjusted offense level based on the $400,000 amount of the bribe.

From this use of the lesser $400,000 figure, the government appeals.

## II.

The government argues that the district court should have calculated the upward adjustment to the base level on the basis of the $3 to $5 million benefit to be received from the bribery scheme, rather than the $400,000 amount of the bribe.

■ We agree. Section 2C1.1 of the Guidelines provides the framework for calculating the sentence for bribery offenses. This provision sets the base offense level at ten. Section 2C1.1 further requires an upward adjustment to the base offense level in accordance with the amounts used in the § 2F1.1 table for fraud offenses if the value of the bribe or the benefit received from the bribe exceeds $2,000. In determining that amount, the Guidelines could not be more explicit. The figure to be plugged into the § 2F1.1 table is "the greater" of the value of the bribe or the value of the benefit received in return for the bribe. U.S.S.G. § 2C1.1, comment (n. 2).

In this case, the benefit from the bribe was greater than the amount of the bribe, so the benefit should have been used in calculating the upward adjustment. More-

over, neither of the two figures was disputed. Kant stipulated in his plea agreement that the amount of the bribe was $400,000 and that "[t]he benefit to be derived from the conspiracy to bribe the MARAD official was between $3 and $5 million, which reflects the difference between the fair market value of the vessel and the amount for which it would have been sold to the conspirators pursuant to the bribery scheme." Nonetheless, the district court rejected the $3 to $5 million "benefit received" figure and calculated the upward adjustment based on the $400,000 bribe. The result was an upward adjustment of nine levels for a bribe exceeding $350,000, rather than the upward adjustment of thirteen levels that would accompany a benefit received in excess of $2,500,000.[1]

■ In applying the Guidelines, the district court labored under the misapprehension that the benefit from the bribery scheme was unascertainable on the basis of the evidence available to it. The court apparently thought that the plea stipulation incorrectly addressed the *gross* value of the bribery scheme, rather than the *net* benefit figure called for by the Guidelines. Although the district court was correct in holding that the Guidelines require calculation of the upward adjustment on the basis of the net benefit received from the scheme, U.S.S.G. § 2C1.1, comment (n. 2), it wrongly concluded that there was insufficient evidence of net benefit in this case. Kant's plea agreement expressly stipulated that the benefit to be derived from the bribe was between $3 and $5 million, and it went so far as to explain that the stipulated figure is a net figure, reflecting the difference between the fair market value of the vessel and the $3 million price paid by the conspirators. This stipulation, sufficient to satisfy the stricter clear and convincing standard, *United States v. Anderson*, 879 F.2d 369, 378 n. 3 (8th Cir. 1989), plainly satisfies the lesser preponderance standard applicable to factual questions at sentencing. *See United States v.*

---

**1.** Whether the benefit is $3 or $5 million makes no difference to the sentence in this case.

*Engleman,* 916 F.2d 182, 184 (4th Cir. 1990).

In addition to the stipulation in the plea agreement, the district court had available undisputed expert testimony from the government on the issue of net benefit. The government's expert offered to testify—in support of the figure stipulated to by Kant—that the fair market value of the *Stuyvesant* was between $6 and $8 million. The district court declined to hear that testimony because it thought that the "gross value" of the vessel was insufficient evidence of net benefit. In so doing, the district court misapprehended the nature of the benefit to be received from the bribery scheme. The fair market value figure of $6 to $8 million is a gross value figure, but the net benefit is easily calculated by subtracting from that gross figure the $3 million price paid for the vessel, for a net benefit of $3 to $5 million.[2]

We thus hold that Kant's sentence should have been based on the $3 to $5 million benefit to be received rather than the $400,000 amount of the bribe.[3] We vacate the sentence imposed by the district court and remand for resentencing in accordance with this decision. The district court also awarded Kant a two-level reduction for acceptance of responsibility and another such reduction for being a minor participant in the scheme. The government has not appealed those rulings, and we of course have no quarrel with them.

VACATED AND REMANDED.

---

**2.** The question also arises as to whether the bribe itself is an expense to be used in the calculation of net benefit. We think that the only evidence of an expense offered in this case was the $3 million purchase price of the *Stuyvesant.* Both the Application Notes to § 2C1.1 and the logic of the Guidelines suggest that the amount of the bribe should not be an "expense" subtracted from the benefit received. Application Note 2 illustrates the meaning of net benefit through the following example:

> [I]f a $150,000 contract on which $20,000 profit was made was awarded in return for a bribe, the value of the benefit received in return is $20,000.

From this Note it would appear that the notion of net benefit is something distinct and apart from the bribe itself.

Further, it would seem anomalous that the amount of the bribe would have opposite effects on the two alternative computations under § 2C1.1. Under one alternative, a court looks to the amount of the bribe, so the larger the bribe the greater the sentence enhancement. Under the net benefit alternative on the other hand, if a court subtracts the amount of the bribe as an expense, a larger bribe would lessen the net benefit and thus shorten the sentence. As best we can determine, the Guidelines contemplate the bribe simply as a cost of a criminal enterprise, akin to the cost of guns and ski masks to bank robbers, which should not be used in the reduction of a sentence.

**3.** Kant also argues that a sentence based on the amount of the bribe is appropriate in this case in light of this circuit's opinion in *United States*

*v. Chand,* 930 F.2d 913 (4th Cir.1991). Kant argues that because the *Chand* court upheld the sentence of Chand, a coconspirator in this bribery scheme with Kant which was based on the amount of the bribe, the Guidelines require that Kant's sentence also be based on the amount of the bribe. We do not think the disposition in Chand's case controls this case, however. In *Chand,* there was insufficient evidence of benefit, and the court upheld the district court's sentence as a factual finding under the clearly erroneous standard. Here, however, there is much less room for dispute on the evidence. The government offered uncontroverted evidence of the fair market value of the vessel, and Kant—unlike Chand—never disavowed the facts set forth in the plea agreement.

Finally, we emphasize that the purpose of the Guidelines is to promote the paramount value of uniformity in sentencing. Uniformity is achieved through even application of Guidelines provisions and restriction of discretion to impose sentences based on extrinsic factors such as the sentence imposed upon a codefendant. *See United States v. Carpenter,* 914 F.2d 1131, 1135–36 (9th Cir.1990); *United States v. Parker,* 912 F.2d 156, 158 (6th Cir.1990); *United States v. Boyd,* 885 F.2d 246, 248–49 (5th Cir.1989). In other words, the uniformity sought by § 2C1.1 is uniformity among the universe of bribery convictions, even at the temporary cost of some apparent disparity in the sentencing of coconspirators in an individual case.