

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-23-1999

# USA v. Cohen

Precedential or Non-Precedential:

Docket 97-1888

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"USA v. Cohen" (1999). *1999 Decisions.* Paper 47.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/47

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 19, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 97-1888 and 98-1004

UNITED STATES OF AMERICA,

  Appellant in No. 97-1888

v.

GERSON COHEN,

  Appellant in No. 98-1004

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 97-124)
District Judge: Honorable Clarence C. Newcomer

Argued June 8, 1998
Reargued January 12, 1999

Before: SCIRICA, NYGAARD, and ROTH,* Circuit Judges

(Opinion filed February 19, 1999)

_____

* Judge Seitz was a member of the original panel. However, he died
before the matter was decided. Judge Roth has been designated a
member of the panel in his stead.

        Michael R. Stiles
        Walter S. Batty, Jr.
        Amy L. Kurland (Argued)
        Office of the United States Attorney
        Suite 1250
        615 Chestnut Street
        Philadelphia, PA 19106

         Counsel for Appellant/Cross-
         Appellee United States of America

        Catherine M. Recker (Argued)
        Aeryn S. Fenton
        Welsh & Recker, P.C.
        Suite 3402
        1818 Market Street
        Philadelphia, PA 19103

         Counsel for Appellee/Cross-
         Appellant Gerson Cohen

OPINION OF THE COURT

NYGAARD, Circuit Judge.

A jury convicted Gerson Cohen of mail fraud for paying kickbacks to a grocery store's purchasing agents. Cohen challenges his conviction, claiming that the evidence was insufficient; that the Court improperly admitted evidence that his co-conspirators had pleaded guilty; and that the Court wrongfully denied judicial immunity to a defense witness. We will affirm his conviction. The Government appeals Cohen's sentence, claiming that the District Court erred in calculating the enhancement by using the dollar value of the bribes rather than the benefit conferred by the bribe, and by granting a reduction for accepting responsibility. We will vacate Cohen's sentence and remand for resentencing.

I.

Butler Foods, a wholesale meat distribution company, sells meat to supermarket chains, individual grocery stores,

2

and restaurants. Butler Foods' salesmen made illegal cash payments to customers' meat managers to induce them to purchase from Butler Foods. The payments usually amounted to one penny per pound of meat purchased, provided that the customer bought at least 10,000 pounds a week. After customers made qualifying purchases, Larry Lipoff, part owner of Butler Foods, gave the kickback money to his salesmen, who then delivered the cash to the meat managers.

Gerson Cohen, a meat salesman for Butler Foods, participated in this illegal payment scheme. From 1992 through 1995, Cohen paid kickbacks totaling $111,548.21 to five meat managers for Thriftway Food Stores. In addition to Cohen's regular salary by corporate check, Butler Foods paid Cohen $500 per week in cash. He failed to report this income on his tax returns for three years, resulting in a tax deficiency of $23,939. He was charged with twenty-five counts of mail fraud, in violation of 18 U.S.C. S 1341, and three counts of subscribing a false tax return, in violation of 26 U.S.C. S 7206. The District Court severed the charges and convened a jury trial on mail fraud.

The jury convicted Cohen on all twenty-five counts of mail fraud. He then pleaded guilty to the three counts of income tax fraud. Applying U.S.S.G. S 2B4.1 to Cohen's participation in the kickback scheme, the District Court initially assigned a base offense level of 8, then enhanced it 6 levels by using the actual dollar amount of the kickbacks. It granted Cohen a decrease of 2 levels under U.S.S.G. S 3B1.2(b) for his minor role in the offense. The Court then considered Cohen's tax offenses and assigned a combined offense level of 14 under U.S.S.G. S 3D1.4. Finally, the Court granted Cohen a reduction of 2 levels for accepting responsibility under U.S.S.G. S 3E1.1. The District Court sentenced Cohen to twenty-eight concurrent terms offive months in prison, five months home confinement, three years supervised release, a $7500 fine, and a $1400 special assessment.

3

II.

A.

Cohen first argues that the Government's evidence was insufficient to prove that he used the U.S. mail. We disagree. An essential element of mail fraud is "the use of the United States mails in furtherance of the fraudulent scheme." United States v. Hannigan, 27 F.3d 890, 892 (3d Cir. 1994). This element requires some competent evidence that, as a routine business practice or office custom, the type of document at issue in the case was sent through the U.S. mail. See id. at 893-94. As we indicated in Hannigan, "the prosecution need not affirmatively disprove every conceivable alternative theory as to how the specific correspondence was delivered," but "some reference to the correspondence in question is required." Id. at 892-93.

Cohen himself need not have placed the particular documents into the U.S. mail. A mailing is knowingly caused within the terms of the statute "[w]here one does an act with knowledge that the use of the mails will follow in the ordinary course of business." Pereira v. United States, 347 U.S. 1, 8-9, 74 S. Ct. 358, 363 (1954).[1] Here, the bookkeeper for Butler Foods, who supervised the clerical workers who were responsible for generating and mailing invoices, testified extensively about the company's standard business practice for billing its customers. She testified that after the meat invoices were prepared, they were placed in envelopes, run through the postal meter, and put in a U.S. mail bin which Lipoff took to the post office in his car. She testified that Butler Foods never used any delivery method other than the U.S. mail for any of its invoices, and that the Thriftway invoices at issue in this case were handled in the normal manner.

A manager at the company testified that it was standard practice to pick up the invoices in the U.S. mail bin and

_____

1. In a factually similar case, the Ninth Circuit Court of Appeals held that a meat buyer for a supermarket chain was subject to the statute even though he did not personally participate in the relevant mailings. See United States v. Lea, 618 F.2d 426, 430 (9th Cir. 1980).

4

drop them off at the post office, and that he himself did this on occasion. Finally, an accountant for the Thriftway stores testified that it was normal business practice for his company to receive Butler Foods' invoices through the U.S. mail. This testimony provides sufficient evidence that Butler routinely delivered its invoices through the U.S. mails.

B.

Next, Cohen argues that the District Court erred by admitting evidence that the three Thriftway meat managers whom the Government called as witnesses had pleaded guilty to receiving kickbacks from Cohen. Cohen contends that this evidence was inadmissible under Federal Rule of Evidence 403 because the risk that the jury would convict him based on his co-conspirators' guilty pleas substantially outweighed their probative value. We review the admission of such evidence only for abuse of discretion. See United States v. Gaev, 24 F.3d 473, 476 (3d Cir. 1994).

Although the plea agreements of co-conspirators are not admissible to prove the defendant's guilt, they are admissible for some purposes: to rebut the inference that the defendant was unfairly singled out for prosecution, to dampen attacks on credibility, to foreclose an inference that the prosecution is hiding evidence, to explain the witness's firsthand knowledge of the defendant's misdeeds, and to elicit facts bearing on the witness's credibility. In Gaev, we held that the general principle applicable to the admission of such testimony is this: "If a co-conspirator who appears as a witness has pleaded guilty, the trier of fact should know about the plea agreement in order properly to evaluate the witness's testimony, unless that would unduly prejudice the defendant." Id.

Cohen argues that admitting the guilty pleas of the three Thriftway meat managers was an abuse of discretion because he promised not to attack their credibility on that basis. However, "[w]hile plea agreements have often been admitted in response to actual or anticipated attacks on a witness's credibility, an attack is not always necessary to justify their introduction." Id. at 477-78. Even absent any suggestion by Cohen, it would have been natural for the

5

jury to wonder why Cohen was prosecuted but the meat managers were not. Moreover, the guilty pleas were admissible to impeach the credibility of the managers, whose testimony supported Cohen's claim that paying kickbacks was a common practice in the wholesale meat industry, and therefore, not criminal. That these same managers had entered guilty pleas for accepting the payments contradicted this testimony. The District Court concluded that admitting the guilty pleas was proper for one or all of the reasons cited in Gaev and would not be unduly prejudicial to defendant Cohen.

In any case, a proper limiting instruction will normally cure a potentially prejudicial admission of plea agreements. The District Court instructed the jury not to draw conclusions or inferences about Cohen's guilt from the fact that prosecution witnesses had pleaded guilty to similar charges. Because the Government proffered the evidence for valid purposes, and the District Court gave a sufficient limiting instruction, admitting the guilty pleas was well within the Court's discretion.

C.

Cohen also claims that the District Court erred by refusing to confer judicial immunity on a witness crucial to his defense. According to Cohen's proffer, Larry Lipoff, part owner of Butler Foods, would have testified that Harold Friedland, owner of several Thriftway stores, admitted knowing of Cohen's kickbacks to two Thriftway meat managers. That knowledge, the defense contends, would have prevented Cohen from being found guilty under the fraud statute. When Cohen attempted to call him as a defense witness, Lipoff invoked his Fifth Amendment privilege against self-incrimination. The Government refused to immunize Lipoff, who was under investigation for his role in the kickback scheme, and the District Court refused Cohen's request to confer judicial immunity on Lipoff.

A judge may confer immunity on a defense witness who otherwise refuses to testify if five conditions are met: the immunity is properly sought in the district court, the

6

witness is available to testify, the proffered testimony is clearly exculpatory, the proffered testimony is essential to the defense, and there is no strong governmental interest against the immunity. See Government of V.I. v. Smith, 615 F.2d 964, 972-73 (3d Cir. 1980). A potential prosecution of the prospective witness is a sufficient governmental interest to countervail a grant of judicial immunity. See United States v. Lowell, 649 F.2d 950, 965 (3d Cir. 1981). Here, the Government suspected that Lipoff, as the owner of Butler Foods and Cohen's employer, was the architect of the kickback scheme. Lipoff was under investigation at the time of Cohen's trial and has since been indicted for his role. Therefore, because the Government had a strong interest in not immunizing Lipoff, the District Court correctly denied judicial immunity.

D.

Finally, Cohen argues that the Government is impermissibly using his post-conviction immunized testimony. After Cohen's conviction, the Government granted him use immunity and compelled him to testify before a grand jury. Shortly thereafter, the Government appealed Cohen's sentence, and the same prosecutor who questioned him before the grand jury filed the Government's appellate brief. Based on this fact, Cohen claims that the Government is exploiting his immunized testimony in this appeal.

It is true, of course, that the Government may not use a witness's compelled immunized testimony as evidence against him in a subsequent criminal prosecution. See 18 U.S.C. S 6002. Thus, Cohen's immunized testimony may have tainted a subsequent trial, were we ordering one. Moreover, the decision of the U.S. Attorney here could potentially have infected this appeal if Cohen could point to some information given in the immunized testimony that the Government is using against him. Cohen, however, has not alleged any specific manner in which the Government used the information learned during his immunized testimony to gain an unfair advantage in this appeal. The Government supported all factual assertions in its brief with citations to the District Court record and made no

reference to Cohen's immunized testimony. Cohen, therefore, has not shown any prejudice to him from this dual role of the prosecutor.

III.

The Government appeals Cohen's sentence, arguing that the District Court misapplied two sections of the United States Sentencing Guidelines. We review the District Court's factual findings for clear error. Questions regarding the District Court's interpretations of the sentencing guidelines are "purely legal," and thus require plenary review. United States v. Frierson, 945 F.2d 650, 655 (3d Cir. 1991).

A.

First, the Government argues that the District Court misinterpreted U.S.S.G. S 2B4.1 by enhancing Cohen's sentence with reference to the actual dollar amount of the kickbacks rather than to the net value Butler Foods gained as a result of those kickbacks. Section 2B4.1(a) assigns an initial base offense level of 8 to conduct involving commercial bribery and kickbacks. Subsection (b)(1) then provides an enhancement based on the greater of two dollar amounts: "the value of the bribe or the improper benefit to be conferred." The commentary to this section states that if the latter figure cannot be estimated, then the court must use the former. See U.S.S.G. S 2B4.1 application note 6.

At sentencing, the parties disagreed over the correct interpretation of "improper benefit." The Government argued that the phrase referred to the net value Butler Foods gained as a result of Cohen's payment of the kickbacks. Cohen argued that it referred to the money he himself pocketed as a result of his kickbacks. In a colloquy with Cohen's attorney, the District Court appeared to agree that "improper benefit" meant the money accruing to Cohen as an individual. The Court then found it "extremely difficult, if not impossible, to measure the benefit to the briber in this case." Therefore, it instead used the actual dollar amount of the kickbacks, $111,548.21, to enhance

8

Cohen's base offense by 6 levels. See U.S.S.G.
SS 2B4.1(b)(1), 2F1.1(b)(1)(G).

The District Court misinterpreted "improper benefit."
"Improper benefit" is "the value of the action to be taken or
effected in return for the bribe." U.S.S.G. S 2B4.1
application note 2. The commentary to section 2B4.1 cross-
references section 2C1.1, the comments to which state:

> The value of "the benefit received or to be received"
> means the net value of such benefit. Examples: . .. A
> $150,000 contract on which $20,000 profit was made
> was awarded in return for a bribe; the value of the
> benefit received is $20,000. Do not deduct the value of
> the bribe itself in computing the value of the benefit
> received or to be received. In the above examples,
> therefore, the value of the benefit received would be the
> same regardless of the value of the bribe.

U.S.S.G. S 2C1.1 application note 2 (emphasis added). In
addition, the comments to section 2B4.1 state:

> As with non-commercial bribery, this guideline
> considers not only the amount of the bribe but also the
> value of the action received in return. Thus, for
> example, if a bank officer agreed to the offer of a
> $25,000 bribe to approve a $250,000 loan under terms
> for which the applicant would not otherwise qualify,
> the court, in increasing the offense level, would use the
> greater of the $25,000 bribe, and the savings in
> interest over the life of the loan compared with
> alternative loan terms. If a gambler paid a player
> $5,000 to shave points in a nationally televised
> basketball game, the value of the action to the gambler
> would be the amount that he and his confederates won
> or stood to gain. If that amount could not be estimated,
> the amount of the bribe would be used to determine
> the appropriate increase in offense level.

U.S.S.G. S 2B4.1 application note 6 (emphasis added).

Thus, "improper benefit" refers to the net value accruing
to the entity on whose behalf the individual paid the bribe.
Other courts agree. See, e.g., United States v. Landers, 68
F.3d 882, 884 (5th Cir. 1995) (sales representative who

9

paid bribes is subject to enhancement based on the net value his employer derived from contracts obtained as a result of the bribes); United States v. Ziglin, 964 F.2d 756, 758 (8th Cir. 1992) (defendant subject to enhancement for the total amount of improper benefit that resulted from bribery scheme, not merely for his individual share); United States v. Kant, 946 F.2d 267, 269 (4th Cir. 1991) (defendant's sentence must be enhanced based on net value of improper benefit accruing to him and his two co-conspirators).

Cohen's attorney conceded at oral argument that this understanding of "improper benefit" is correct. She acknowledged that the net value of the contracts gained by Butler Foods as a result of the Thriftway kickback scheme would be the appropriate basis for calculating Cohen's sentence, if the Government's evidence accurately reflected the net value of these contracts.

At sentencing, the Government adduced evidence of the "improper benefit" that accrued to Butler Foods. Cohen's kickbacks induced Thriftway to purchase $10,000,000 worth of meat from Butler Foods, whose seven percent margin yielded a profit of $700,000. On remand, the District Court must specifically address the evidence produced by the Government and any contrary evidence put forth by Cohen and state its reasons for accepting or rejecting the evidence. A $700,000 "improper benefit," if sufficiently proved, mandates an enhancement of 10 levels to Cohen's base offense. See U.S.S.G. SS 2B4.1(b)(1), 2F1.1(b)(1)(K).

Cohen offers two other arguments to support the District Court's enhancement calculation. First, he claims that section 2B4.1(b)(1) permits enhancement based on "improper benefit" only if that benefit would not have been realized "but for" the kickback. We do not interpret section 2B4.1 to be so rigid. The text requires the court to estimate the value of the "improper benefit to be conferred." "To be conferred" is tentative language that requires something less than actual causation; it could include any benefit that the briber expected to receive at the time he paid the bribe, even if he did not ultimately receive it. If Cohen's reading were correct, the language would read "improper benefit

10

actually conferred" rather than "to be conferred." Moreover, even if Cohen's claim that most distributors paid kickbacks to customers is accurate, his "but for" argument fails. If paying kickbacks to potential customers was as commonplace as Cohen claims, then it follows that the contracts secured by Butler Foods as a result of its acquiescence in this illegal practice would not have been conferred if Cohen had not made these payments.

Second, Cohen argues that the Government should be estopped from claiming that the actual dollar amount of the bribe was the correct measure under section 2B4.1. In prosecuting the three Thriftway meat managers for their roles in accepting Cohen's bribes, the Government entered into plea agreements stating that "the value of the improper benefit to Butler Foods to be conferred by the bribery/kickback payments is not readily provable as of the date of this agreement." In these earlier plea agreements, the Government simply acknowledged that, at that time, it did not have enough information to calculate the improper benefit to Butler Foods. By the time of Cohen's conviction, the Government had learned the relevant facts--the total value of meat Thriftway purchased and Butler's profit margin--that permitted the proper determination. Hence, Cohen's estoppel theory fails entirely.

We conclude that the District Court misinterpreted section 2B4.1 and, as a result, may have applied an incorrect enhancement to Cohen's base offense level. 2 We will therefore vacate and remand for resentencing. Of course, it remains for the District Court to find whether the Government has proven its claims of resulting value by a preponderance of the evidence. See United States v. McDowell, 888 F.2d 285, 291 (3d Cir. 1989).

_____

2. Judge Scirica notes that where the improper benefit conferred on a principal is grossly disproportionate to the bribe paid and to the amount received by the agent, and the disproportion is "present to an exceptional degree," a downward departure under S 5K2.0 might be appropriate. Koon v. United States, 518 U.S. 81, 96 (1996).

11

B.

The Government also argues that the District Court erred by granting Cohen a 2-level reduction under section 3E1.1. The District Court must reduce the base offense by 2 levels "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. S 3E1.1. The determination of the sentencing judge as to whether such acceptance of responsibility has been shown "is entitled to great deference on review." U.S.S.G. S 3E1.1 application note 5.

At sentencing, Cohen stated to the Court: "If I would have known when this started that it was going to be like this, your Honor, I would have lost the job and I would have gladly lost it. I'm sorry." The District Court found that Cohen "has accepted responsibility for his offenses, borne out by his statements here in court," and granted Cohen the reduction.

The Government argues that Cohen should not have been granted this reduction because he went to trial on the mail fraud counts. This argument is supported by an application note to section 3E1.1 which states: "This adjustment is not intended to apply to a defendant who puts the Government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. S 3E1.1 application note 2. While the note admits to some rare exceptions (for example, a defendant may go to trial to "assert and preserve issues" unrelated to factual guilt), none of those appear to be applicable to Cohen. See id. In addition, "in each [rare exception], . . . a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct." Id.

Cohen argues that the effect of application note 2 is to create an unconstitutional burden on defendants in Cohen's position by effectively penalizing them for asserting their constitutional right to trial. Our holding in Frierson, 945 F.2d at 650, offers some support for this position. In Frierson, we held that the denial of a reduction under section 3E1.1 is a penalty which cannot properly be imposed solely for the defendant's assertion of his Fifth Amendment privilege. See id. at 658-59.

12

The characterization of 3E1.1 reductions has been the subject of some dispute. Even within circuits, the approach has occasionally been erratic. Compare United States v. Parker, 903 F.2d 91, 105 (2d Cir. 1990) ("We, like the Eleventh Circuit, `are unprepared to equate the possibility of leniency with impermissible punishment.' "), with United States v. Oliveras, 905 F.2d 623, 626 (2d Cir. 1990) ("So long as the defendant's statements are not immunized against use in subsequent criminal prosecutions, the effect of requiring a defendant to accept responsibility for crimes other than those to which he has pled guilty or of which he has been found guilty is to penalize him."). A majority of the other courts construe denied 3E1.1 reductions as"denied benefits" rather than "penalties." See, e.g., United States v. Frazier, 971 F.2d 1076, 1086 (4th Cir. 1992) ("we fail to see how withholding the leniency offered in U.S.S.G.S 3E1.1 from those who refuse to waive their right to remain silent can be thought punitive"); United States v. White, 869 F.2d 822, 826 (5th Cir. 1989) ("The fact that a more lenient sentence is imposed upon a contrite defendant does not establish a corollary that those who elect to stand trial are penalized."); United States v. Henry, 883 F.2d 1010, 1011 (11th Cir. 1989) ("Section 3E1.1 may add to the dilemmas facing criminal defendants, but . . . [w]e are unprepared to equate the possibility of leniency with impermissible punishment."). These decisions often rely on Corbitt v. New Jersey, 439 U.S. 212, 99 S. Ct. 492 (1978).

We believe that Corbitt controls our decision. In Corbitt, the Supreme Court held that a New Jersey murder statute that provided the potential for a shorter sentence to defendants who pleaded non vult was constitutional and did not violate the defendant's Sixth Amendment right to trial. See Corbitt, 439 U.S. at 218, 99 S. Ct. at 497. In doing so, the Court noted that "not every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a right, is invalid. Specifically, there is no per se rule against encouraging guilty pleas." Id. at 218–19, 99 S. Ct. at 497. To the extent that Corbitt is in tension with our decision in Frierson, we must follow the Supreme Court. Sentencing Guideline 3E1.1 creates an analogous incentive for defendants to

13

plead guilty, and under Corbitt, this incentive is constitutional.

Were this simply a matter of determining a defendant's credibility, we would defer entirely to the District Court because we cannot claim to have an equal ability to perceive and judge the defendant's demeanor. That is to say, the words "I am sorry," uttered by a defiant defendant, mean nothing. The same words from a contrite defendant mean everything. Here, however, because the sentencing guidelines need to be consistently interpreted to serve their purpose, and because the comments to the various sections provide an avenue to consistent interpretation, we must see that they are applied by a sentencing court. We will vacate and remand for further consideration.

We recognize that this case presents the unusual situation in which the defendant has pleaded guilty to some of the charges against him (the tax counts) while going to trial on others. The sentencing guidelines do not specifically address this situation, noting only that "truthfully admitting the conduct comprising the offense(s) of conviction" is a factor for the judge to consider. U.S.S.G. S 3E1.1 application note 1(a). In cases such as this, the trial judge "has the obligation to assess the totality of the situation in determining whether the defendant accepted responsibility." McDowell, 888 F.2d at 293 n.2. Were the District Court able to grant a credit for Cohen's guilty plea to the three tax charges separately, then we would see no error. However, the guidelines do not allow for this because multiple counts of conviction must be grouped before an adjustment can be made for acceptance of responsibility under Part E of Chapter 3 of the guidelines. See U.S.S.G. S 1B1.1. As a result, the "totality" assessment must include the fact that Cohen originally pleaded not guilty to all the counts and put the Government to its proof on the majority of the charges, pleading guilty to the tax counts only after being convicted on the bribery charges.

IV.

Because we conclude that the District Court misinterpreted sections 2B4.1 and 3E1.1 of the sentencing

14

guidelines, and that it must make findings of fact with respect to whether the Government has proved the benefit to be conferred upon Butler Foods, we will vacate Cohen's sentence and remand for resentencing in accordance with this opinion. We reject all other allegations of error.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit