HARD IMAN, J.,
dissenting.
I agree with the Majority’s adoption of the Landers test to interpret USSG § 201.1(b)(2). I likewise agree that Lianidis bore the burden of producing the evidence necessary to determine the nature and amount of her costs that were directly attributable to performing work procured by the bribe. Unlike my colleagues, however, I would affirm Lianidis’s judgment of sentence for two independent reasons. First, the District Court did not clearly err in determining which costs incurred by DMS were directly attributable to its ill-gotten contracts. Second, because DMS was a closely-held business and Lianidis was its President, the District Court did not clearly err when it held that *284 the portions of the salaries Lianidis and her husband paid themselves that were attributable to their work on the ill-gotten contracts constituted the “benefit received” from her bribes.
The District Court expressly adopted the Landers test in calculating the net value of the benefit received, and held Lianidis’s proposed deductions were not direct costs. The Majority concludes that the District Court reached this conclusion “without explanation” and “did not engage” in a more elaborate analysis of the Landers test. But the Majority does not endeavor to explain how the District Court’s finding of fact, curt though it was, constituted “clear error.” See United States v. Cohen, 171 F.3d 796, 802 (3d Cir.1999). Lianidis bore the burden of producing evidence to support her claim that some costs were deductible because they were directly attributable to the ill-gotten contracts. The record indicates that she presented the District Court with a laundry list of business expenses and requested a deduction for each. Several of these expenses were classic “fixed costs,” such as rent and upkeep of DMS’s office space, and Lianidis offered little or no evidence connecting them to the FAA contracts she procured through bribery. Absent such proof, I find no “clear error” in the District Court’s conclusion that those costs were not deductible in determining the “benefit received” under § 2C1.1(b)(2).[1]
Even if Lianidis had carried her burden of showing which costs were directly attributable to her ill-gotten FAA contracts, I would affirm the judgment of the District Court because it correctly found that the $1,046,823.80 in wages Lianidis and her husband paid themselves for work they performed on the contracts procured through bribery were part of the “net benefit” received as a result of her bribe. In this regard, I disagree with the Majority’s treatment of DMS as “the entity on whose behalf the defendant paid the bribe.” Because DMS was a closely-held corporation and Lianidis, as its President, controlled her salary and her husband’s salary, I would hold that Lianidis was the beneficiary of the bribes.
In holding otherwise, the Majority relies on United States v. Cohen, 171 F.3d 796 (3d Cir.1999). In Cohen, an employee obtained contracts for his employer through bribery, and we concluded that the employer was “the entity on whose behalf’ the bribe was paid. Id. at 803. This conclusion made perfect sense because Cohen was not an owner or officer of the company. That is decidedly not the case here. Lianidis owned and controlled DMS, she was the beneficiary of the company’s profits, and she determined her own and her husband’s salaries. This control enabled Lianidis to pay herself as an employee (salary) or as a shareholder (distribution of profits). Under the rule established by the Majority, the owner of a closely-held business who pays herself a handsome salary, as did Lianidis, is subject to a lower Guidelines range than an owner who pays herself a modest salary during the year and pays out the profits of the company at year end, even though both owners end up with the same amount of money. Even worse, an employee such as Cohen — who through bribery procures a contract that results in great financial benefit to his employer but little or no benefit to himself — would be subject to a *285 higher Guidelines range than Lianidis, who chose to pay herself and her husband over $1,000,000 generated by her own bribery.[2]
For the foregoing reasons, I would hold that when an employee pays bribes to win contracts for a corporation that she owns and controls, the employee herself is the beneficiary of the bribe, and the amount of the benefit is equal to the sum of (1) the portion of her salary attributable to the bribe-induced contract[3] and (2) the profits the corporation earned from that contract (after paying her salary). Because the District Court did not clearly err in calculating either of these amounts,[4] I respectfully dissent.

. Lianidis proffered evidence through her accountant that DMS paid $2,128,207 in wages to subcontractors for work performed on the FAA contracts at issue here. This does not change the Guidelines range found by the District Court, however, because the net benefit received by the company still would have exceeded $ 1 million.

. The Majority's analysis of Application Note 2(2) works fine in the typical case where the person who commits the bribery does so on behalf of a corporation that employs him. I find Application Note 2(2) factually inapposite to closely-held companies like DMS for the reasons stated herein.

. I recognize that salaries are not pure profit to an employee because working imposes a labor cost on the employee. As a matter of theory, the net benefit accruing to an employee would be the amount by which her salary exceeds this cost. In practice, however, I can discern no way for a sentencing court to determine this cost. Moreover, I am loathe to permit a deduction for the value of labor that one had the opportunity to perform only through bribery. Even if such a determination were feasible, the employee would still be required to submit evidence demonstrating that her labor costs were directly attributable to the ill-gotten contract. Because Lianidis has made no effort to do so here, I view the entire portion of the salaries she paid to herself and her husband as part of the net benefit she received from her bribes.

.The District Court did not add these amounts together in calculating the benefit received, instead treating them as alternative measures of the benefit. This was the approach advocated by the government, which was bound by its plea agreement with Lianidis not to argue for an offense level higher than 17, and as a result could not argue that the value of the benefit received was greater than $1 million to $2.5 million.