

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-14-2000

# United States v Universal Rehab

Precedential or Non-Precedential:

Docket 97-1412 and 97-1414

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"United States v Universal Rehab" (2000). *2000 Decisions.* Paper 56.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/56

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 14, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 97-1412 and 97-1414

UNITED STATES OF AMERICA

v.

UNIVERSAL REHABILITATION SERVICES
(PA), INC.,

        Appellant in No. 97-1412

UNITED STATES OF AMERICA

v.

ATTILA HORVATH,

        Appellant in No. 97-1413
        Cross-Appellee in No. 97-1467
        Not a party to the En Banc
        Proceeding

UNITED STATES OF AMERICA

v.

RICHARD J. LUKESH

        Appellant in No. 97-1414

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Nos. 94-cr-00147-1, 94-cr-00147-2
and 94-cr-00147-3)
District Judge: Honorable Robert F. Kelly


Argued: Friday, May 22, 1998

BEFORE: ROTH, McKEE and
GARTH, Circuit Judges

Argued En Banc: Monday, November 8, 1999

BEFORE: BECKER, Chief Judge,
SLOVITER, MANSMANN, GREENBERG,
SCIRICA, NYGAARD, ALITO, ROTH,

McKEE, RENDELL, BARRY and
GARTH, Circuit Judges

(Filed: March 14, 2000)

Thomas C. Carroll (Argued)
Carroll & Cedrone
6th & Chestnut Street
Public Ledger Building
Suite 940
Philadelphia, PA 19106

Attorney for Appellants
Universal Rehabilitation Services (PA),
Inc. and Richard J. Lukesh

Michael R. Stiles
United States Attorney
Walter S. Batty, Jr.
Assistant United States Attorney
Chief of Appeals
Valli F. Baldassano
Suzanne B. Ercole
Robert A. Zaumzer (Argued)
Assistant United States Attorney
Office of the United States Attorney
615 Chestnut Street
Philadelphia, PA 19106

Attorneys for Appellee

2

OPINION OF THE COURT

GARTH, Circuit Judge:

We have granted en banc review to resolve a conflict in our court's jurisprudence that has surfaced following the publication of United States v. Cohen, 171 F.3d 796 (3d Cir. 1999), United States v. Gaev, 24 F.3d 473 (3d Cir. 1994), and United States v. Gambino, 926 F.2d 1335 (3d Cir. 1991), on the one hand, and United States v. Thomas, 998 F.2d 1202 (3d Cir. 1993), on the other.1 In the instant matter, the District Court permitted the government, pursuant to Federal Rule of Evidence ("Federal Rule") 403, to introduce both the plea agreements and guilty pleas of two witnesses notwithstanding a representation by defense counsel that they would not challenge the credibility of such witnesses. The jury convicted all three defendants on a sole count of mail fraud. The panel majority reversed. We granted the government's petition for rehearing and vacated the panel decision.2

We will now affirm the convictions entered against defendants Universal Rehabilitation Services (PA), Inc., and Richard Lukesh.

I

Universal Rehabilitation Services (PA), Inc. ("Universal") is engaged in the business of providing various rehabilitative services, especially speech therapy, to elderly Medicare patients living in nursing homes. Universal would enter into

_____

1. Other cases addressing the admission of a testifying co-conspirator's guilty plea and/or plea agreement include the following: Government of the Virgin Islands v. Mujahid, 990 F.2d 111 (3d Cir. 1993); United States v. Werme, 979 F.2d 108 (3d Cir. 1991); United States v. Inadi, 790 F.2d 383 (3d Cir. 1986); Bisaccia v. Attorney General , 623 F.2d 307 (3d Cir. 1980); United States v. Gullo, 502 F.2d 759 (3d Cir. 1974); United States v. Toner, 173 F.2d 140 (3d Cir. 1949).

2. The government did not petition for rehearing with respect to the original panel's disposition of Attila Horvath's appeal. See infra n.8.

3

contracts with several local nursing homes, and would thereafter send its speech therapists to treat patients on site. Rather than submit its bills directly to Medicare, Universal employed Independence Blue Cross ("IBC") as an intermediary processor. Under this arrangement, Universal would submit its claims to IBC, which would process and organize such claims before sending them to Medicare.

Both federal law and the regulations promulgated by the Secretary of Health & Human Services authorize the Medicare program to pay only those claims that are deemed to be medically reasonable and necessary. In determining whether this criteria have been met with specific reference to speech therapy services, the Medicare program generally looks to four separate criteria: (1) the therapy must be safe and effective for treating the patient's condition; (2) the services provided must be sufficiently complex insofar as only a certified speech pathologist can provide such services; (3) if restorative treatment were ordered, the pathologist must expect that the services would improve the patient's condition significantly in a reasonable amount of time; and (4) the frequency and duration of the services must bear a reasonable and necessary relation to the patient's condition. In this criminal matter, the government contends that both Universal and its representatives intentionally altered the claims it submitted to IBC in order to meet these criteria.

Pursuant to a physician's orders, a Universal therapist would evaluate a patient's needs in order to determine initially whether treatment was necessary, and if so, propose a program of treatment. Once a physician approved the evaluation, this evaluation became a vitally important document for Medicare purposes insofar as it provided an assessment that the treatment was medically necessary for the patient. Indeed, Medicare reviewers specifically considered the evaluation in rendering reimbursement decisions.

Once treatment of a particular patient commences, Medicare requires that a physician certify each thirty days that continued treatment was medically necessary. Further, Medicare will only pay for such continued treatment so long as the patient is progressing towards the goals referenced

in the initial evaluation, and as such, Universal therapists would write notes concerning the patient's progress. Universal would meet the thirty-day recertification

requirement by having a physician sign a Medical Information Form ("MIF ") that contained a summary of the previous thirty days of treatment and the prescribed course of treatment for the thirty days to come.

Universal would submit its Medicare claims to IBC electronically for IBC's review. According to Universal, IBC's requirements for the proper processing of its claims were elaborate, detailed, and extremely difficult with which to comply. For this reason, Universal and IBC often differed as to the proper interpretation of the Medicare regulations, and, indeed, the ultimate decision as to whether Medicare would reimburse a particular claim. Pursuant to a random auditing system, IBC ultimately requested Universal to provide documentation in support of certain claims that Universal had submitted. Irregularities in this documentation led IBC to investigate further, an investigation that uncovered the very "rewriting" scheme that is at issue in this criminal matter.

The government alleges that between the summer of 1988 and September 21, 1991, Universal and its representatives altered and rewrote certain Medicare claims in order to ensure that the Medicare program would reimburse such claims. Universal admits that this occurred, but claims that such rewriting had two forms: (1) honestly inserting omitted information so as to comply with Medicare regulations; and (2) altering initial evaluations, medical information forms, and progress certifications so as

to reflect either the need for medical treatment or to certify that the patient was progressing because of treatment already provided.

As for this latter form of rewriting, the government contends that initial evaluations were altered so as to provide the "appearance" that speech therapy was medically necessary for the patient, medical information forms were made to appear as if a physician actually had reviewed the patient's progress and recommended that the speech therapy continue, and finally, the therapists' personal progress notes concerning the patient were modified to

provide the appearance that the patient was improving. In order to obtain the required physician's signature, Universal and its representatives would photocopy the physician's signature on the initial form and paste this photocopy on the altered form. Only after the rewriting occurred would the claims be submitted to IBC for review. All of these efforts, of course, were intended to increase the likelihood that Medicare would reimburse Universal for the speech therapy services Universal claimed to have rendered.[3]

On March 31, 1995, a federal grand jury indicted appellants Universal, Universal's Vice-President and Director of Finance, Attila Horvath ("Horvath"), Universal's Director of Operations, Richard Lukesh ("Lukesh"), and three other defendants[4] on seventeen counts of mail fraud, in violation of 18 U.S.C. S 1341, and twenty-one counts of false claims, in violation of 18 U.S.C. S 287. Prior to trial, Julia Blum Bonjo ("Bonjo") and Penny Martin ("Martin") pled guilty to a sole count of mail fraud in connection with the scheme described above.[5] Universal, Horvath, and Lukesh, also prior to trial, filed motions in limine with the District Court, attempting to prevent the government, pursuant to Federal Rule 403, from introducing such guilty pleas and plea agreements into evidence. At the same time, Universal, Horvath, and Lukesh each represented that they would not affirmatively challenge the credibility of either Bonjo or Martin during cross-examination.[6]  The District

_____

3. Fraud has been pervasive in connection with Medicare reimbursement. See Georgia Court, Keeping an Eye on Medicare Fraud, Cincinnati Post, Dec. 16, 1999, at 4C ("The Office of the Inspector General at Health and Human Services estimated that $12.6 billion [of $176.1 billion in Medicare payments were] improper."); Medicare Contractors Aren't Pursuing Fraud, Audit Shows, USA Today, Dec. 2, 1998, at A1.

4. The other defendants were Vicki Meitus, Mary Mongoven Conroy, and

Julia Blum Bonjo.

5. As stated above, Bonjo had been indicted with Universal, Horvath, and Lukesh -- the appellants in this appeal. Martin, however, pled guilty to a separate information filed by the government.

6. Specifically, Lukesh's Motion in Limine stated, in pertinent part, that "Defendant asserts that at the trial of this action he will not raise the guilty pleas/plea agreements on cross-examination nor seek to raise any inference on which the accomplices [sic] pleas of guilty would be admissible to rebut." App. at 79.

6

Court held extensive oral argument on this issue, and reserved its ruling until after the trial had commenced and the government was prepared to call Bonjo as a witness. Citing to our opinion in United States v. Gaev , 24 F.3d 473 (3d Cir. 1994), the District Court then denied the motions in limine and permitted the government to introduce both Bonjo and Martin's guilty pleas and plea agreements as part of its principal case. In particular, the District Court stated that

> if [Bonjo and Martin] testify the jury is going to certainly wonder whether or not they have been charged. It's going to wonder perhaps what they have been promised by the prosecutor if anything and what they may be getting in return for their testimony.

> I think in weighing all of those factors with the possible prejudice that I am going to allow the Government to bring out the fact of the guilty plea and the fact of the guilty plea agreement.

App. at 1768.

After the government had introduced the evidence of Bonjo's plea and concomitant plea agreement, the District Court immediately instructed the jury as follows:

> Members of the jury, you've just heard . . . evidence that this witness has plead [sic] guilty to a charge of mail fraud and which involved matters of some of the things that she has testified to here in this trial.

> I caution you that although you may consider this evidence, that is the evidence that she has entered a plea of guilty in assessing the credibility and the testimony of this witness, you should give it such weight as you feel it deserves.

> You may not consider the evidence that she has entered a plea of guilty against any defendant, any in this case,

nor may any inference be drawn against any defendant on trial by reason of this witness's plea of guilty.

App. at 1966-67 (emphasis added). The District Court provided a similarly detailed instruction after the government elicited testimony concerning Martin's plea

7

agreement. App. at 2863-64. Finally, during its charge to the jury after the trial, the District Court instructed as follows:

> Julia Blum Bonjo and Penny Martin entered into plea agreements with the Government. Such plea
>
> agreements are expressly approved as lawful and proper by the United States Supreme Court and are appropriate, are proper. Each witness' decision to plead guilty is a personal decision about her own guilt. You may not consider this evidence against the defendant on trial nor may you draw any conclusions or inferences of any kind about the guilt of the defendants on trial from the fact that a prosecution witness pled guilty to similar charges.
>
> The testimony of such witnesses, as I indicated, should be scrutinized with caution and give it the weight that you think it should be given under all of the circumstances.
>
> And I indicated to you during the trial that the fact that they entered pleas of guilty could not be considered by you in determining the guilt or innocence of any of the people on trial here. The only reason the plea and the plea agreement were brought out was so that you would know all of the circumstances surrounding the entry of the plea, you'd know the terms under which the plea was entered and you could judge for yourselves whether the witness in the trial is testifying truthfully or whether the witness has a motive to embellish testimony or vary from the truth.
>
> That is the only basis or the only reason why the plea and the plea agreement were admitted.

App. at 4829-30.

After deliberation, the jury found Universal, Horvath, and Lukesh guilty on count one of the indictment, which specifically alleged that Universal had engaged in mail fraud when IBC mailed a check to Universal representing a

claim for treatment provided to one of its patients, Mildred
Hynes, between February 15, 1989, and February 28,

1989. The jury, however, also found Universal, Horvath,
and Lukesh not guilty on the remaining thirty-eight counts
of the indictment. All three defendants then moved for a
judgment of acquittal pursuant to Federal Rule of Criminal
Procedure 29, arguing that the government had introduced
insufficient evidence to support the jury's verdict. On May
31, 1996, the District Court denied this motion and
proceeded to sentencing.7 On May 19, 1997, the District
Court sentenced Universal to a fine of $25,000, Horvath to
a period of three years probation, a fine of $10,000, and
$705.20 in restitution, and Lukesh to three years of
probation, a fine of $15,000, and $705.20 in restitution.

Universal, Horvath, and Lukesh appealed the judgment of
conviction and sentence to this Court, arguing that the
District Court abused its discretion in admitting the guilty
pleas of Bonjo and Martin, and in denying their post-trial
motions for judgments of acquittal on sufficiency of
evidence grounds. In particular, the defendants argued that
the fact that the jury had convicted them of the same count
to which Bonjo and Martin had pled guilty -- and had then
acquitted them of the remaining thirty-eight counts of the
indictment -- proved that the admission of Bonjo and
Martin's plea agreements and guilty pleas had a clear
prejudicial effect.

The government cross-appealed, arguing that the District
Court erred in sentencing Horvath and Lukesh by failing to
consider the loss stemming from the fraud alleged in the
other thirty-eight counts of the indictment on which the
jury acquitted Universal, Horvath, and Lukesh --"relevant
conduct" pursuant to sections 1B1.3 and 2F1.1 of the
United States Sentencing Guidelines -- and in failing to
provide required findings of fact with regard to the
sentences the District Court imposed. The government also
answered the defendants' argument concerning the guilty

_____

7. The District Court's May 31, 1996 opinion also revisited the issue
presently before the en banc court; namely, whether it was an abuse of
discretion to allow the introduction of Bonjo and Martin's guilty pleas.
The court concluded that it had not erred, reiterating its concern over
selective prosecution and that the witnesses' testimony would assist the
jury in assessing credibility.

plea issue by arguing that a party cannot attack a District Court's evidentiary ruling made prior to or during a trial by referencing a jury's ultimate verdict. The government claimed that such hindsight could not be used to measure the District Court's exercise of discretion.

In an opinion filed on February 11, 1999, the panel, one judge dissenting, reversed. More specifically, the panel held that there was insufficient evidence to convict Horvath of mail fraud, but that the government had introduced sufficient evidence to support the convictions of both Universal and Lukesh. As such, the panel majority remanded to the District Court to enter a judgment of acquittal for Horvath.

The panel majority also held that the District Court had abused its discretion in allowing the government to introduce evidence of Bonjo and Martin's guilty pleas, and as a result, ordered the District Court to hold a new trial concerning the charges levied against Universal and Lukesh. Because of this, the panel majority did not reach the sentencing issues presented in the government's cross-appeal.

On April 15, 1999, the full court granted the government's petition for rehearing en banc, and vacated the panel's opinion and judgment.8 See United States v. Universal Rehabilitation Servs. (PA), Inc., Nos. 97-1412, 97-1414, 97-1468, 1999 WL 239513, at *1 (3d Cir. Apr. 15, 1999). Our order focused rehearing on the District Court's denial of the defendants' motions in limine, which sought to prevent the government from introducing Bonjo and Martin's guilty pleas. See id.; see also United States v. Universal Rehabilitation Servs. (PA), Inc., 173 F.3d 914, 915 (3d Cir. 1999) (directing parties to "file supplemental

_____

8. Our en banc order only vacated the panel opinion and judgment insofar as it concerned Universal and Lukesh. As such, the panel's holding that the government failed to present sufficient evidence to justify the jury's conviction of Horvath, and that the District Court therefore erred in failing to order a judgment of acquittal on Horvath's behalf remains unaffected. Because our holding today revives the need to address the government's cross-appeal as to the sentence the District Court imposed against Lukesh, we discuss that issue in text infra.

10

memoranda . . . set[ting] forth what factors should be considered by the District Court in ruling on the admissibility of a testifying co-conspirator's guilty plea"). We now affirm the convictions of Universal and Lukesh entered by the District Court.

II

The District Court exercised subject matter jurisdiction
pursuant to 18 U.S.C. S 3231. We possess appellate
jurisdiction over Universal and Lukesh's arguments of error
pursuant to the final order doctrine of 28 U.S.C.S 1291.

III

A

We have previously held that the admission of a witness's
guilty plea and/or plea agreement9 is governed by Federal
Rule 403, see, e.g., United States v. Gaev, 24 F.3d 473, 478
(3d Cir. 1994), and as such, the rule itself provides an
appropriate starting point for our analysis. Federal Rule
403 provides:

_____

9. Universal and Lukesh claim that the terms "plea" and "plea
agreement" should not be utilized interchangeably and that the District
Court's admission of Bonjo and Martin's plea agreements was an
especially grave abuse of discretion. Although we agree that the terms
are not synonymous, we believe that the distinction that Universal and
Lukesh attempt to draw is one without a difference as it relates to the
Federal Rule 403 analysis. Once one accepts the premise that a
witness's guilty plea has probative value, see text infra, especially with
respect to the witness's credibility, the introduction of the terms of the
plea agreement becomes a necessary complement to disclose to the jury
that the witness has not been promised a "sweetheart deal" in exchange
for the testimony. See United States v. Pierce , 959 F.2d 1297, 1304 (5th
Cir. 1992). Further, Universal and Lukesh have failed to identify any
prejudicial effect that could flow from the introduction of the terms of
the
witnesses' plea agreements once the pleas themselves are accepted into
evidence. As such, for purposes of our analysis, the District Court's
admission of Bonjo and Martin's pleas and plea agreements are treated
equally.

11

> Although relevant, evidence may be excluded if its
> probative value is substantially outweighed by the
> danger of unfair prejudice, confusion of the issues, or
> misleading the jury, or by considerations of undue
> delay, waste of time, or needless presentation of
> cumulative evidence.

FED. R. EVID. 403. As the text of the rule indicates, evidence
that is otherwise relevant and admissible may only be
excluded if the probative value of the evidence is
substantially outweighed by its prejudicial effect. For this

reason, a number of courts have held that Federal Rule 403 creates a presumption of admissibility, and that district courts may utilize the rule only rarely to cause the exclusion of evidence. See, e.g., United States v. Morris, 79 F.3d 409, 412 (5th Cir. 1996); Hendrix v. Raybestos-Manhattan, Inc., 776 F.2d 1492, 1502 (11th Cir. 1985). As one leading treatise states, "[i]f there is doubt about the existence of unfair prejudice . . . it is generally better practice to admit the evidence, taking necessary precautions by way of contemporaneous instructions to the jury followed by additional admonitions in the charge." 2 Weinstein's Federal Evidence, S 403.02[2][c], at 403-16 (Joseph M. McLaughlin ed., 1999); see also Glen Weissenberger, Federal Evidence, S 403.2, at 87 (3d ed. 1998) ("Rule 403 favors a presumption of admissibility.").

We have also held that because the trial judge is present in the courtroom as the challenged evidence is offered, and is therefore "in the best position to assess the extent of the prejudice caused a party," the trial judge must "be given a very substantial discretion in `balancing' probative value on the one hand and `unfair prejudice' on the other." United States v. Long, 574 F.2d 761, 767 (3d Cir. 1978) (emphasis added); cf. General Electric Co. v. Joiner, 522 U.S. 136, 143 (1997) (holding, in the context of expert testimony, that "deference . . . is the hallmark of abuse of discretion review"). For this reason, we review a district court's balancing analysis pursuant to Federal Rule 403 for an abuse of discretion, see In re Paoli R.R. Yard PCB Litig., 113 F.3d 444, 453 (3d Cir. 1997), and accord great deference to the District Court's ultimate decision.

12

A district court's decision, therefore, cannot be reversed merely because we, as members of a reviewing court, possess a different view concerning the probative value or prejudicial effect of the challenged evidence. See Long, 574 F.2d at 767. In order to justify reversal, a district court's analysis and resulting conclusion must be "arbitrary or irrational."10 Paoli, 113 F.3d at 453. Indeed, "[i]f judicial self-restraint is ever desirable, it is when a [Federal] Rule 403 analysis of a trial court is reviewed by an appellate tribunal." Long, 574 F.2d at 767. With this in mind, we turn now to the application of these principles to the District Court's admission of both Bonjo and Martin's guilty pleas and the plea agreements that they executed with the government.

B

Any analysis pursuant to Federal Rule 403 must begin with a determination as to whether the evidence has

probative value. It is well-settled that evidence of a testifying witness's guilty plea or plea agreement may be introduced for probative, and therefore permissible, purposes. As this Court has identified on numerous occasions, such purposes include: (1) to allow the jury accurately to assess the credibility of the witness; (2) to eliminate any concern that the jury may harbor concerning whether the government has selectively prosecuted the defendant; and (3) to explain how the witness hasfirst-hand knowledge concerning the events about which he/she is testifying. See Gaev, 24 F.3d at 476; United States v. Gambino, 926 F.2d 1355, 1363 (3d Cir. 1991); United States v. Werme, 939 F.2d 109, 113 (3d Cir. 1991); United States v. Inadi, 790 F.2d 383, 384 n.2 (3d Cir. 1986); see

_____

10. As with other instances in which a district court exercises its discretion, we also have held that when a district court issues a ruling pursuant to Federal Rule 403, it must specifically indicate its rationale. See Paoli, 113 F.3d at 453 (quoting United States v. Murray, 103 F.3d 310, 318 (3d Cir. 1997)). In the present matter, there is no dispute that the District Court more than satisfied this requirement, as it expressly stated at the time of its ruling that it believed Bonjo and Martin's guilty

pleas would assist the jury in assessing credibility and alleviate any concern the jury held over selective prosecution. App. at 1768.

13

also United States v. Thomas, 998 F.2d 1202, 1208 (3d Cir. 1993) (Rosenn, J., dissenting).

As we held in Werme, "[t]he most frequent purpose for introducing such evidence is to bring to the jury's attention facts bearing upon a witness's credibility." Werme, 939 F.2d at 114 (citing Gambino, 926 F.2d at 1363). Universal and Lukesh, however, argue that witness credibility ceased to be a proper purpose for the admission of Bonjo and Martin's guilty pleas once they promised, through their motions in limine, not to attack Bonjo and Martin's credibility. Jurors are instructed, however, in almost all cases, that they are to determine the credibility of all witnesses who testify. Indeed, they are so instructed even in the absence of an affirmative challenge to witness credibility. See 1A Kevin F. O'Malley et al., Federal Jury Practice & Instructions (Criminal), S 15.01, at 350 (5th ed. 2000) ("You, as jurors, are the sole and exclusive judges of the credibility of each of the witnesses called to testify in this case and only you determine the importance or the weight that their testimony deserves.").11 We addressed this argument in Gaev:

> When a co-conspirator testifies he took part in the
> crime with which the defendant is charged, his
> credibility will automatically be implicated. Questions
> will arise in the minds of the jurors whether the co-
> conspirator is being prosecuted, why he is testifying,
> and what he may be getting in return. If jurors know
> the terms of the plea agreement, these questions will
> be set to rest and they will be able to evaluate the
> declarant's motives and credibility. . . . [A]n attack is
> not always necessary.

Gaev, 24 F.3d at 477. Our sister circuits concur. See, e.g.,
United States v. Pennington, 168 F.3d 1060, 1067 (8th Cir.
1999); United States v. Maliszewski, 161 F.3d 992, 1003-04
(6th Cir. 1998); United States v. Sanders, 95 F.3d 449, 454
(6th Cir. 1996). As such, we are satisfied that the

_____

11. The District Court similarly charged the jury in the present matter.
App. at 4825 ("[Y]ou are the judges of the facts and therefore in the
process you are also the sole judges of the credibility of the witnesses
and the weight their testimony deserves.").

14

government may seek to introduce a witness's guilty plea
and/or plea agreement even in the absence of a challenge
to the witness's credibility.

Universal and Lukesh argue, however, that the Supreme
Court's recent opinion in Old Chief v. United States, 519
U.S. 172 (1997), provides support for their argument. In
Old Chief, the defendant was charged with violating a
federal law, 18 U.S.C. S 922(g)(1), which prohibits an
individual previously convicted of a felony from possessing
a firearm. See id. at 174. Because the government was
required, as a part of its prima facie case, to prove that the
defendant had previously been convicted of a felony, it
sought to present evidence of such a conviction. See id. at
175. Concerned that evidence of the previous crime would
adversely influence the jury towards his defense, the
defendant sought to prevent the government from
introducing such evidence by stipulating that he had
previously been convicted of a felony. See id.  The District
Court refused to compel the government to stipulate, and
allowed the government to introduce evidence of the prior
crime. See id. The Court of Appeals affirmed the conviction,
finding that regardless of the defendant's offer to stipulate,
the government was entitled to prove the prior crime
through the introduction of probative evidence. See id. at
177.

The Supreme Court reversed, holding that the District

Court had abused the discretion with which it was vested under Federal Rule 403. See id. at 178. Although the Court reaffirmed the general principle that the government "is entitled to prove its case by evidence of its own choice," it held that a defendant may avoid the introduction of potentially prejudicial evidence by presenting the government with an equally probative evidentiary alternative. Id. at 186. Finally, the Court held that a stipulation that the defendant had been convicted of a crime within the purview of the federal firearms law was of equal probative value to the government's proffered evidence, and as such, the District Court had abused its discretion. See id.

Universal and Lukesh argue that they, similar to the defendant in Old Chief, presented the District Court with an

15

alternative that lacked the prejudicial effect of the government's proffered evidence -- a representation that they would refrain from any affirmative challenge to the credibility of either Bonjo or Martin. This alternative, however, presented the District Court with a much different scenario than that which faced the district court in Old Chief.12 First, the defendant in Old Chief offered to stipulate to an element of the offense, whereas Universal and Lukesh simply offered not to render any affirmative challenge to Bonjo or Martin's credibility. Second, and of greater importance, the Court's holding in Old Chief was expressly premised on the Court's belief that the defense's offer to stipulate to the prior conviction and the government's offer to introduce evidence of the same were equally probative. See id. at 191. In this appeal, however, Universal and Lukesh's offer to refrain from affirmatively challenging Bonjo or Martin's credibility did not, and could not, carry the same probative value on the issue of witness credibility as the introduction of Bonjo and Martin's guilty pleas.

Even if we were inclined to accept Universal and Lukesh's arguments concerning credibility, however, we have identified other purposes for which the government sought to introduce Bonjo and Martin's pleas and/or plea agreements. In particular, the pleas were admissible to counteract the possibility that the jury might believe that Universal and Lukesh were being selectively prosecuted. See, e.g., Gaev, 24 F.3d at 479. In other words, once Bonjo and Martin testified concerning their participation in the events for which Universal and Lukesh had been indicted, the jury reasonably might conclude that the government was attempting to single out Universal and Lukesh for prosecution.

Finally, courts have also held that a witness's guilty plea is admissible to explain why the witness possesses firsthand knowledge concerning the events to which he or she is testifying. See, e.g., United States v. Halbert, 640 F.2d 1000, 1005 (9th Cir. 1981). Although one might view this as a corollary to the credibility rationale, members of

_____

12. Universal and Lukesh concede that their analogy to Old Chief is not perfect. See Appellants' Supplemental Memorandum, at 19.

the jury may still question whether the witness's testimony is worthy of belief. The fact that the witness has pled guilty to an offense concerning the very events that required his or her testimony makes it that much more likely that the testimony is truthful and reliable, as an individual typically does not plead guilty to an offense in the absence of culpability. As such, the government was entitled to introduce Bonjo and Martin's pleas in order to answer any question the jury might have concerning how Bonjo and Martin possessed knowledge of the events and actions about which they testified.

As a result, we hold that evidence of Bonjo and Martin's guilty pleas and their concomitant plea agreements were probative in terms of Federal Rule 403, despite Universal and Lukesh's representation not to challenge Bonjo and Martin's credibility.[13]

_____

13. Section IV of Judge Roth's dissent advances an argument that not even Universal and Lukesh have asserted. Her dissent charges that we have offended both subsections (a) and (b) of Federal Rule 608 by holding that the District Court properly admitted the guilty pleas of Bonjo and Martin.

Federal Rule 608 prohibits the introduction of either "character evidence" or "specific instances of conduct" proved by extrinsic evidence in order to support a witness's credibility. The dissent claims that Bonjo and Martin's guilty pleas could be considered both "character evidence" and "specific conduct," and because the government introduced the pleas -- at least in part -- to support Bonjo and Martin's credibility, Federal Rule 608 bars their admission.

The short answer to these arguments is that at no time did Universal or Lukesh ever raise Federal Rule 608 as a bar to the admission of Bonjo and Martin's pleas. Universal and Lukesh did not lodge an objection on this basis at any point during the District Court proceedings, and did not raise the issue before either the panel reviewing the District Court's ruling or this en banc court. As a result, not only was this theory deemed irrelevant by Universal and Lukesh, but by not raising it, they

have waived any benefit they may have derived from such an argument. See FED. R. EVID. 103(a)(1); United States v. Gibbs, 739 F.2d 838, 849 (3d Cir. 1984) (en banc). Moreover, Federal Rule 608(a) applies only to opinion and reputation evidence that is probative of one's character, and it is beyond dispute that the guilty pleas do not fall into either of these

narrow categories. Finally, courts have interpreted Federal Rule 608(b)'s

C

We have repeatedly held that the government may introduce neither a witness's guilty plea nor his or her concomitant plea agreement as substantive evidence of a defendant's guilt. See, e.g., Gaev, 24 F.3d at 476; Gambino, 926 F.2d at 1363. We discussed the rationale for this rule at length in United States v. Toner, 173 F.2d 140 (3d Cir. 1949):

> The foundation of the countervailing policy is the right of every defendant to stand or fall with the proof of the charge made against him, not against somebody else. The defendant had a right to have his guilt or innocence determined by the evidence presented against him, not by what has happened with regard to a criminal prosecution against someone else.

Id. at 142, quoted in Bisaccia v. Attorney General, 623 F.2d 307, 312 (3d Cir. 1980). As such, the bald introduction of a witness's guilty plea concerning facts or events similar to that for which the defendant is on trial could have the prejudicial effect of suggesting to the trier of fact that the defendant should be found guilty merely because of the witness's guilty plea.

Nonetheless, we have also consistently held that this prejudicial effect is typically cured through a curative instruction to the jury. See, e.g., Mujahid, 990 F.2d at 116; Werme, 939 F.2d at 113.14 Our sister circuits, once again,

_____

bar on "specific instances of conduct" to prohibit the introduction of conduct only if it is being used to either attack or bolster the witness's character (i.e., one's general disposition, see United States v. Doe, 149 F.3d 634 (7th Cir. 1998)) for truthfulness. See, e.g., United States v. Pope, 132 F.3d 684, 688 (11th Cir. 1998). Because the government did not introduce Bonjo and Martin's guilty pleas to prove that Bonjo and Martin generally spoke and/or acted truthfully, Federal Rule 608(b) is inapposite.

14. Universal and Lukesh argue that we should revisit our rule that any

prejudicial effect inherent in the introduction of a witness's guilty plea and/or plea agreement can be ameliorated through the use of a limiting instruction, arguing, inter alia, that juries cannot comprehend such

concur in this understanding. See, e.g., United States v. Prawl, 168 F.3d 622 (2d Cir. 1999); United States v. Tse, 135 F.3d 200, 207 (1st Cir. 1998); Sanders, 95 F.3d at 454; see also Pierce, 959 F.2d at 1304. The jury in such cases should be instructed that it may not consider the guilty plea and/or plea agreement as evidence that the defendant is guilty of the offenses with which he/she is charged, but rather that such evidence is offered only to allow the jury to assess the witness's credibility, to eliminate any concern that the defendant has been singled out for prosecution, or to explain how the witness possessed detailed first-hand knowledge regarding the events about which he or she testifies.

As recounted above, the District Court provided such an instruction at three separate occasions during the trial: after Bonjo testified, after Martin testified, and at the end of the trial when the District Court charged the jury. See text supra at pp. 7-8. The District Court's instructions, therefore, served to cure any prejudicial effect that might flow from the introduction of the guilty plea and/or plea agreement of a witness such as Bonjo or Martin.

Universal and Lukesh, however, argue that our previous jurisprudence in this area suggests that limiting instructions are not sufficient to neutralize such prejudicial effect in situations where the defendant is charged with conspiracy and the witness whose guilty plea and/or plea agreement the government introduces is the individual with whom the defendant has been alleged to conspire. The genesis of this concern emanates from United States v. Gullo, 502 F.2d 759 (3d Cir. 1974), in which we stated:

_____

limiting instructions. We are not persuaded by their arguments. See FED. R. EVID. 105 ("When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."); Spencer v. Texas,

365 U.S. 554, 562-63 (1967) ("[T]his type of prejudicial effect is acknowledged to inhere in criminal practice, but it is justified on the grounds that . . . the jury is expected to follow instructions in limiting this evidence to its proper function.").

> The guilty plea to a conspiracy charge carries with it
> more potential harm to the defendant on trial because
> the crime by definition requires the participation of
> another. The jury could not fail to appreciate the
> significance of this and would realize . . . that"it takes
> two to tango." A plea by a co-conspirator thus presents
> a unique situation which may require the courts to
> scrutinize more closely the purported remedial effect of
> instructions.

Id. at 761 (footnote omitted). The Gullo panel stopped short
of recognizing, however, any "distinction between cases
where the plea is to a substantive, rather than to a
conspiracy count." Id. In the instant matter, it is significant
that both Bonjo and Martin did not plead guilty to
conspiracy charges, but rather pled guilty to substantive
counts of mail fraud. App. at 1966, 2863. In any event, we
held in Gaev that the fact that the witness had pled guilty
to a conspiracy charge was merely another factor that a
district court must weigh in engaging in the Federal Rule
403 analysis. See Gaev, 24 F.3d at 478-79.

Accordingly, we hold that the detailed limiting
instructions provided by the District Court cured the
prejudicial effect, if any, flowing from the introduction of
Bonjo and Martin's guilty pleas and plea agreements.

D

As we stated above, we cannot reverse a District Court's
conclusion under Federal Rule 403 unless such a
conclusion is held to be an abuse of discretion, which we
have defined as "arbitrary or irrational." Paoli, 113 F.3d at
453. The District Court heard argument on the defendant's
motion in limine and accompanying arguments concerning
Bonjo and Martin plea agreements and guilty pleas at three
separate instances during this criminal proceeding: (1) on
May 3, 1995, prior to the testimony of FBI Agent Cook
(App. at 806); (2) on May 9, 1995, prior to the testimony of
Dr. Paul C. Moock, Jr. (App. at 1768); and (3) subsequent
to trial in ruling upon the defendants' post-trial motions. At
each instance, the District Court carefully and meticulously
weighed the above-mentioned factors of credibility,

20

selectivity, and witness knowledge that inform the probative
value versus prejudicial effect standard required by Federal
Rule 403. At each instance, the District Court's balancing
was careful and comprehensive in concluding that the
probative value of Bonjo and Martin's plea agreements

guilty pleas outweighed any prejudicial effect. Recognizing
our limited role as an appellate court, therefore, we cannot,
and do not, hold that the District Court acted either
arbitrarily or irrationally -- and therefore did not abuse its
discretion -- in admitting Bonjo and Martin's guilty pleas
and plea agreements over Universal and Lukesh's objection.

IV

Having held that the District Court properly exercised its
discretion in admitting Bonjo and Martin's pleas after
consideration of the factors relevant to such a decision, it
is evident that the opinions of United States v. Cohen, 171
F.3d 796 (3d Cir. 1999), United States v. Gaev , 24 F.3d 473
(3d Cir. 1994), United States v. Gambino, 926 F.2d 1335 (3d
Cir. 1991), and the cases that they followed, as well as
Judge Rosenn's dissent in United States v. Thomas, 998
F.2d 1202 (3d Cir. 1993), reflect the correct jurisprudence
in this Circuit in connection with the admission of a
witness's guilty plea and plea agreement. To the extent,
therefore, that other decisions of this Court do not comport
with the analysis or conclusion announced today, they are
overruled.

V

One procedural issue remains to be resolved. It will be
recalled that the original panel majority had vacated the
District Court's judgment of conviction and sentence
pertaining to Universal and Lukesh. Accordingly, the panel
majority had not found it necessary to address the
government's cross-appeal that argued that the District
Court erred in sentencing Lukesh.

We have held here that the District Court properly
admitted the testimony of Bonjo and Martin as to their plea
agreements and guilty pleas, and as a result, the new trial
that the panel majority directed is not warranted. Rather,

21

our decision today affirms the convictions of both Universal
and Lukesh.

Because the panel majority did not find it necessary to
consider the government's cross-appeal, this Court has
never rendered a decision as to whether the District Court
erred in the sentence that it imposed upon Lukesh.
Moreover, because as earlier noted, this Court -- sitting en
banc -- did not consider the sentencing issue that the
government initially raised, that issue is presently still open
and undecided as a result of our decision to affirm
Universal and Lukesh's convictions.

Rather than decide this issue without briefing or argument, we will refer the government's issue on sentencing to the original panel to determine whether resentencing should be ordered to include the relevant conduct of acquitted activity pursuant to sections 1B1.3 and 2F1.1 of the United States Sentencing Guidelines. See generally United States v. Watts, 519 U.S. 148 (1997); United States v. Baird, 109 F.3d 856 (3d Cir. 1997). In addition, the original panel should dispose of the government's argument that the District Court should have made findings of fact concerning why it declined to consider the particular conduct in calculating Universal and Lukesh's sentences. See, e.g., E.C. Ernst, Inc. v. Koppers Co., 626 F.2d 324 (3d Cir. 1980).

22

ROTH, Circuit Judge, dissenting, with whom Judges Sloviter, McKee and Rendell join and with whom Chief Judge Becker joins except for footnote 12.

I respectfully dissent from the result reached by the majority. The majority has affirmed the District Court's admission into evidence of Bonjo and Martin's guilty pleas,[1] over the defendants' objection, despite the defendants' agreement not to mention the guilty pleas on cross-examination or to raise any inference which these guilty pleas might rebut. I believe that in doing so the majority deviates from the result mandated by Federal Rules of Evidence 403 and 608. Moreover, the majority's holding would now make it possible for the government in a criminal case to introduce the guilty plea of a defendant's accomplice simply by claiming that this evidence must be admitted for the jury to properly assess the testifying accomplice's credibility. Because I conclude that the District Court abused its discretion by admitting the guilty pleas into evidence, I would reverse the convictions of Lukesh and Universal and remand this case to the District Court for a new trial.

I. A.

To demonstrate how the majority's opinion deviates from our existing precedent, I will first place this case in a historical context. In 1949, in United States v. Toner, we first considered whether the guilty plea of a conspirator was admissible as evidence in the criminal trial of an alleged co-conspirator. See United States v. Toner, 173 F.2d 140 (3d Cir. 1949). In Toner, we ultimately held that the trial court's admission of an alleged co-conspirator's guilty plea, combined with a defective limiting instruction, required reversal of the defendant's conviction. See id. at 142. The

Toner Court's reasoning, articulated by Judge Goodrich,
_____

1. Like the majority, I believe that the distinction between guilty pleas and plea agreements is, in the context of this case, a distinction without a difference. See supra Majority Opinion at 3. As such, I use the term "guilty plea(s)" to refer to guilty plea(s) and/or the corresponding plea agreement(s).

1

forms the foundation upon which the present case must be decided:

> From the common sense point of view[,] a plea of guilty by an alleged fellow conspirator is highly relevant upon the question of the guilt of another alleged conspirator. If A's admission that he conspired with B is believed, it is pretty hard to avoid the conclusion that B must have conspired with A. This is one of the cases, therefore, where evidence logically probative is to be excluded because of some countervailing policy. There are many such instances in the law.

> The foundation of the countervailing policy is the right of every defendant to stand or fall with the proof of the charge made against him, not against somebody else. Acquittal of an alleged fellow conspirator is not evidence for a man being tried for conspiracy. So, likewise, conviction of an alleged fellow conspirator after a trial is not admissible as against one now being charged. The defendant had a right to have his guilt or innocence determined by the evidence presented against him, not by what has happened with regard to a criminal prosecution against someone else. We think that the charge given upon this point was contrary to that rule and inadvertently, of course, deprived the defendant of a very substantial protection to which he was entitled.

See id. (citations omitted). As Toner highlighted, the danger of unfair prejudice when admitting the guilty plea of a co-defendant is more acute if the charge in question is conspiracy because a conspiracy requires an agreement between two or more individuals. See, e.g., United States v. Davis, 183 F.3d 231, 244 (3d Cir. 1999) ("A conspiracy requires agreement between at least two people to the illegal object of the conspiracy, though other participants need not be indicted.") (citing United States v. Delpit, 94 F.3d 1134, 1150 (8th Cir. 1996); United States v. Krasovich, 819 F.2d 253, 255 (9th Cir. 1987)). If two defendants allegedly conspired, and one defendant has been convicted or has pleaded guilty, the clear implication is that the other

defendant is also guilty. This point has been re-emphasized in subsequent Third Circuit case law:

> The guilty plea to a conspiracy charge carries with it more potential harm to the defendant on trial because the crime by definition requires the participation of another. The jury could not fail to appreciate the significance of this and would realize, as the court said in a similar case, United States v. Harrell, 436 F.2d 606, 614 (5th Cir. 1970), that "it takes two to tango."

United States v. Gullo, 502 F.2d 759, 761 (3d Cir. 1974). Consistent with our holding in Toner, we have subsequently held on many occasions that a witness's guilty plea cannot be admitted for the purpose of proving a defendant's guilt. See United States v. Cohen, 171 F.3d 796, 801 (3d Cir. 1999) ("[T]he plea agreements of co-conspirators are not admissible to prove the defendant's guilt."); United States v. Gaev, 24 F.3d 473, 476 (3d Cir. 1994) ("It is well established that the plea agreements of co-conspirators cannot be used as evidence of a defendant's guilt."); Government of the Virgin Islands v. Mujahid, 990 F.2d 111, 115 (3d Cir. 1993) ("It is well-established that a co-defendant's guilty plea is not admissible to prove the defendant's guilt."); United States v. Werme , 939 F.2d 108, 113 (3d Cir. 1991) ("We have long recognized that evidence of another party's guilty plea is not admissible to prove the defendant's guilt.").2

Implicit in, and necessary to, the reasoning of Toner and subsequent cases is the principle that if a witness's guilty plea is to be admissible at all, it must be admissible for some purpose other than proving the defendant's guilt. See Cohen, 171 F.3d at 801 (holding that an alleged co-conspirator's plea agreement is admissible for "some purposes"); Gaev, 24 F.3d at 476 (holding that an alleged co-conspirator's guilty plea is admissible for "some valid purpose[s]"); United States v. Thomas, 998 F.2d 1202, 1205 (3d Cir. 1993) (holding that an alleged co-conspirator's guilty plea is admissible for "limited purposes"); Mujahid, 990 F.2d at 115 (holding that an alleged co-conspirator's guilty plea is admissible for "other[ ] permissible purposes");

_____

2. These cases alone refute the majority's claim that an accomplice's guilty plea is presumptively admissible. See supra Majority Opinion at 12.

Werme, 939 F.2d at 113 (holding that another party's guilty plea is admissible for "other[ ] permissible purposes"); United States v. Gambino, 926 F.2d 1355, 1363 (3d Cir. 1991) (holding that an alleged co-conspirator's guilty plea is admissible for "some valid purpose[s]"). Thus, the guilty plea is inadmissible, as a matter of law, unless presented for a valid or permissible evidentiary purpose. See, e.g., Thomas, 998 F.2d at 1203-06.

We have then, despite this general rule against the introduction of a witness's guilty plea, recognized three valid, permissible purposes for which a guilty plea can be admitted into evidence. First, it may be admitted "in order to rebut defense counsel's persistent attempts on cross-examination to raise an inference that the co-conspirators had not been prosecuted and that [the defendant] was being single out for prosecution." United States v. Inadi, 790 F.2d 383, 384 n.2 (3d Cir. 1986).

Second, a guilty plea may be admitted "on direct examination" in order "to dampen subsequent attacks on credibility, and to foreclose any suggestion that the party producing the witness was concealing evidence." Gambino, 926 F.2d at 1364. This situation arises most often when the defense plans to attack an accomplice's testimony as being fabricated so that he might receive a less severe punishment in return for testifying.

Finally, although not relevant to this case, a guilty plea may be admitted "to rebut the defense assertion that [the witness] was acting as a government agent when he engaged in the activities that formed the basis for [his guilty] plea." Werme, 939 F.2d at 114.

In addition, some Third Circuit cases have suggested (in dicta) a fourth permissible or valid purpose. For example, in Gaev we suggested that, "[i]t may also be proper to introduce a witness's guilty plea to explain his firsthand knowledge of the defendants' misdeeds." Gaev , 24 F.3d at 476 (emphasis added) (citing United States v. Halbert, 640 F.2d 1000, 1005 (9th Cir. 1981)). I am left wondering, however, how the introduction of a witness's guilty plea into evidence establishes the basis for his or her firsthand knowledge of the crime. Presumably, all that the

4

introduction of the guilty plea establishes is that the witness pleaded guilty. It is the witness's testimony itself that establishes the basis for his or her firsthand knowledge of the crime--the witness has firsthand

knowledge because s/he was present during or participated

in the crime, not because s/he pleaded guilty to the crime.

B.

In the present case, because the defendants agreed not to challenge the witnesses' credibility based on their plea agreements, we are presented with a more focused question than we met in Toner: Whether and under what circumstances a trial court can admit into evidence the guilty plea of an alleged accomplice, over the defendant's objection, when the defendant agrees not to mention the guilty plea on cross-examination and not "to raise any inference on which the accomplices' pleas of guilty would be admissible to rebut."3

In United States v. Thomas, 998 F.2d 1204 (3d Cir. 1993), we first considered this more restricted issue. The District Court in Thomas had admitted two co-conspirators' guilty pleas into evidence, concluding that admission was proper for the limited purposes of "aid[ing] the jury in assessing [the witnesses'] credibility,""establish[ing] the [witnesses'] acknowledgment of their participation in the offense," and "counter[ing] the inference that [the witnesses] had not been prosecuted." Thomas, 998 F.2d at 1204. In reviewing the trial court's decision to admit the guilty pleas into evidence, we noted that the Third Circuit had recognized two relevant, valid or permissible purposes for which an alleged co-conspirator's guilty plea could be introduced into evidence, "to blunt the impact on a government witness's credibility of having evidence of a

_____

3. Both defendants joined the motion in limine to exclude the guilty pleas of the two alleged accomplices. The motion stated in relevant part, "Defendant asserts that at trial of this action he will not raise the guilty plea/plea agreements on cross examination nor seek to raise any inference on which the accomplices' pleas of guilty would be admissible to rebut." Supplemental Brief for the Appellants at 23; see supra Majority Opinion at 6, note 6.

guilty plea brought out on cross examination by the defense," and "to prevent any improper inference by the jury that the defendant has been singled out for prosecution while the co-conspirators have not been

prosecuted." Id. at 1205. We reasoned, however, that neither purpose justified admitting the guilty pleas into evidence, because the defendant had agreed not to challenge the witnesses' credibility based on their guilty pleas, and because the defendant had not suggested he was

being selectively prosecuted. See id.4 We rejected the District Court's claim that the alleged co-conspirators' guilty pleas were admitted into evidence in order to establish their acknowledgment of their participation in the crime, pointing out that defense counsel did not challenge the witnesses' assertion that they participated in the crime. See id.

Balancing the danger of unfair prejudice associated with the admission of the guilty pleas against their probative value pursuant to Federal Rule of Evidence 403, we ultimately held in Thomas that, "[i]n the absence of a proper purpose for the admission of the guilty pleas, the curative instructions of the district court were not sufficient to remove the prejudice to Thomas presented by the evidence of his co-conspirators's [sic] guilty pleas." Id. at 1206. We concluded that we were "not left with the requisite `sure conviction that the error did not prejudice the defendant' " and thus concluded that "the introduction at trial of evidence of Thomas's co-conspirators's[sic] guilty

_____

4. In Thomas, we concluded that the case at hand differed from United States v. Inadi where the alleged co-conspirator's guilty plea was admitted only "to rebut defense counsel's persistent attempts on cross-examination to raise an inference that the co-conspirator's had not been prosecuted and [that] the defendant was being singled out for prosecution." Thomas, 998 F.2d at 1205 (citing United States v. Inadi, 790 F.2d 383, 384 n.2. (3d Cir. 1986)). We noted that if the defendant violated the agreement and "attempted to raise an inference on cross-examination that [the defendant] was being unfairly singled out for prosecution, additional remedial steps could [then] have been taken." Id. at 1205 n.1. Presumably, "additional remedial steps" would have included introducing the alleged co-conspirator's guilty plea into evidence on rebuttal.

6

pleas was reversible error." Id. at 1207 (quoting United States v. Jannotti, 729 F.2d 213, 219-20 (3d Cir. 1984)).

Judge Rosenn filed a vigorous dissent in Thomas, arguing that the alleged co-conspirators' guilty pleas were properly admitted "(1) to bolster the credibility of the co-conspirators as prosecution witnesses; (2) to quell the inference that the co-conspirators were not prosecuted and that Thomas was thus `singled out' for punishment; and (3) to establish the basis for the co-conspirators' firsthand knowledge of the crime about which they testified." Id. at 1208 (Rosenn, J., dissenting). Contending that the alleged co-conspirators' credibility would be at issue regardless of the defense's assurance that it would not attack the witnesses' credibility with respect to their guilty pleas, Judge Rosenn

acknowledged that his dissent was at odds with the Third Circuit's holding in Toner: "One could argue that credibility is always at issue and that my position thus effectively overrules Toner." Id. at 1209. However, Judge Rosenn argued that his position was in fact consistent with the holding in Toner:

> [A] witness's credibility is only at issue when he or she testifies about a relevant and disputed fact. Moreover, Toner merely states that a guilty plea of a witness cannot be used to establish the guilt of the defendant. Thus, even if the guilty plea is always admissible for the purpose of establishing the credibility of the witness, that does not overrule Toner: Toner would still require a limiting instruction, similar to the ones given by the trial judge in the present case, to insure that the jury understands that the guilty plea cannot be used to establish the guilt of the defendant.

Id.

I cannot, however, accept the implications of this explanation, just as I cannot accept the majority's position, unless there has been a meaningful weighing of the probative value of the guilty pleas against the danger of unfair prejudice, as required by Federal Rule of Evidence 403.

7

C.

Subsequent to our decision in Thomas, we again addressed whether the trial court erred by admitting into evidence the guilty plea of an alleged co-conspirator, even though the defendant agreed not to challenge the alleged co-conspirator's credibility nor to raise any inference that would make the guilty plea admissible. See United States v. Gaev, 24 F.3d 473, 474-79 (3d Cir. 1994). On facts nearly identical to those in Thomas, we held in Gaev that the alleged co-conspirators' guilty pleas had been properly admitted into evidence. See id. at 479. In conducting the requisite Rule 403 balancing, we concluded, consistent with Judge Rosenn's dissent in Thomas, that "[w]hen a co-conspirator testifies that he took part in the crime with which the defendant is charged, his credibility will automatically be implicated." Gaev, 24 F.3d at 477 (emphasis added). Ultimately, in Gaev we went beyond the confines of Judge Rosenn's dissent in Thomas , holding that a witness's credibility in a case like Thomas  will "automatically" be at issue. Prior to Gaev , this proposition, that "[w]hen a co-conspirator testifies that he took part in the crime with which the defendant is charged, his

credibility will automatically be implicated," had not arisen in Third Circuit jurisprudence. The consequences of the extension of such an expansive interpretation of our prior case law are illustrated by the majority's opinion in this case.

II. A.

Federal Rule of Evidence 403 states that:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Thus, evidence that is otherwise admissible and probative of guilt must sometimes be excluded because of the danger of unfair prejudice to the defendant. See, e.g. , United States v. Sriyuth, 98 F.3d 739, 746 (3d Cir. 1996).

8

The District Court, in balancing the danger of unfair prejudice associated with Bonjo and Martin's guilty pleas against their probative value, concluded that the probative value was not substantially outweighed by the danger of unfair prejudice. The majority, endorsing this conclusion, states:

> The District Court heard argument on the defendant's [sic] motion in limine and accompanying arguments concerning Bonjo and Martin plea agreements and guilty pleas at three separate instances during this criminal proceeding: (1) on May 3, 1995, prior to the testimony of FBI Agent Cook (App. at 806); (2) on May 9, 1995, prior to the testimony of Dr. Paul C. Moock, Jr. (App. at 1768); and (3) subsequent to trial in ruling upon the defendants' post-trial motions. At each instance, the District Court carefully and meticulously weighed the . . . factors of credibility, selectivity, and witness knowledge that inform the probative value versus prejudicial effect standard required by Federal Rule 403. At each instance, the District Court's balancing was careful and comprehensive in concluding that the probative value of Bonjo and Martin's plea agreements and guilty pleas outweighed any prejudicial effect.

Majority Opinion at 20-21. The record, however, belies this contention.

On May 3, 1995, prior to the testimony of FBI Agent
Cook, the District Court first heard argument on the
defendants' motion in limine. See App. at 806-17.5 After
_____

5. The record suggests that May 3, 1995, was actually the last time that
the District Court heard arguments on the defendants' motion in limine.
The District Court stated:

      All right, I asked you to come at this point so that we could have
a

      last opportunity to argue the motion in limine  and I addressed
your

      attention to the Gave [sic] case. Anyone wish to make any
additional

      arguments, you may do so.

App. at 806. Regardless, this exchange on May 3, 1995, is the first point
in the record at which the District Court heard arguments on the
defendants' motion in limine.

9

hearing argument on the motion, the District Court did not
"carefully and meticulously weigh[ ] the. . . factors of
credibility, selectivity, and witness knowledge that inform
the probative value versus prejudicial effect standard
required by Federal Rule 403," nor did the District Court
"careful[ly] and comprehensive[ly]" conclude "that the
probative value of Bonjo and Martin's plea agreements and
guilty pleas outweighed any prejudicial effect." Rather, the
District Court simply stated: "I'll take all the time I have
available to think about this." App. at 816.

On May 9, 1995, prior to Dr. Paul C. Moock's testimony,
the District Court ruled on the defendants' motion in limine.
The District Court did not hear further argument on the
motion, nor did the District Court "carefully and
meticulously weigh[ ] the . . . factors of credibility,
selectivity, and witness knowledge that inform the probative
value versus prejudicial effect standard required by Federal
Rule 403." The District Court simply made the following
statement:

      All right, I have weighed all of the factors and I think
      in the context of this case we have had and from what
      I know of or have heard by way of reference to Julia
      Blum [Bonjo] and Penny Martin, I think it sounds to
      me as if they are somewhat higher up in the structure.
      And if they testify the jury is going to certainly wonder

whether or not they have been charged. It's going to wonder perhaps what they have been promised by the prosecutor if anything and what they may be getting in return for their testimony.

I think in weighing all those factors with the possible prejudice that I am going to allow the Government to bring out the fact of the guilty plea and the fact of the guilty plea agreement. . . .

I think this is exactly like the Gave [sic] case, only there are more reasons here, because there are so many people who have testified and in their testimony have indicated a certain amount of wrong doing. And they--it's pretty obvious haven't been charged and I think it raises a very serious question in the minds of the jury, especially as to people who are as I said

10

before, higher up in the structure. What are they getting for their testimony, how is it that these people haven't been charged and it's better in my opinion that the jury know it all. That's the basis of the reason.

App. at 1768, 1771-72. The language quoted above clearly indicates that the District Court did little if any balancing but instead simply concluded that Bonjo and Martin's guilty pleas were admissible. In fact, the District Court mentioned only two of the factors that the majority highlights, glossing over them in cursory form:first, credibility, "what are they getting for their testimony," and, second, selective prosecution, "how is it that these people haven't been charged." Moreover, no mention is made by the District Court of the defendants' commitment not to raise these issues or of the possibility of admitting the pleas on rebuttal if the defendants reneged on their commitment. The majority's characterization of the District Court's Rule 403 analysis as "careful," "meticulous" and "comprehensive" is undermined by this cursory Rule 403 analysis.

B.

As set forth in Federal Rule of Evidence 403, and as the majority acknowledges, this case turns on whether the District Court properly weighed the probative value of Bonjo and Martin's guilty pleas against the danger of unfair prejudice to the defendants. Because a proper Rule 403 analysis must consider both the probative value of the guilty pleas, as well as the danger of unfair prejudice associated with the pleas, I will first assess their probative value.

The District Court concluded that the probative value of Bonjo and Martin's guilty pleas was limited to eliminating the appearance of selective prosecution and to informing the jury what the witnesses were receiving in exchange for their testimony. It is beyond question, however, that the probative value of this type of information would have been minimized by the defendants' commitment not to "raise the guilty plea/plea agreements on cross examination nor[ ] to raise any inference on which the accomplices' pleas of

11

guilty would be admissible to rebut." The credibility attack, based on any quid pro quo that the witnesses derived from the plea agreements, would not take place if the defendants refrained from employing this line of attack in their cross-examination.

I am firmly convinced, moreover, that the evaluation of probative value cannot be made without a consideration of the defendants' commitment. The majority disregards the commitment, however, and focuses on the probative value associated with assisting the jury in assessing the credibility of the accomplices in response to jury speculation or in response to the defense's cross-examination attacking a witness's credibility -- a stage of the trial which need not occur if the defendants lived up to their commitment.

In adopting this focus, the majority skirts the line between pointing out that these guilty pleas may have probative value and declaring that the guilty pleas themselves constitute substantive evidence of the defendants' guilt. It is black letter law, as the majority acknowledges, that a witness's guilty plea cannot be admitted as substantive evidence of a defendant's guilt. See Cohen, 171 F.3d at 801 ("[T]he plea agreements of co-conspirators are not admissible to prove the defendant's guilt."); Gaev, 24 F.3d at 476 ("It is well established that the plea agreements of co-conspirators cannot be used as evidence of a defendant's guilt."); Mujahid , 990 F.2d at 115 ("It is well-established that a co-defendant's guilty plea is not admissible to prove the defendant's guilt."); Werme, 939 F.2d at 113 ("We have long recognized that evidence of another party's guilty plea is not admissible to prove the defendant's guilt."). Nevertheless, by ignoring the defendants' agreement not to "raise the guilty plea/plea agreements on cross examination nor [ ] to raise any inference on which the accomplices' pleas of guilty would be admissible to rebut" the majority fails to appreciate that, in light of defendants' commitment not to raise the issue of the pleas, the probative value of Bonjo and Martin's guilty

pleas is negligible. Moreover, the jury will then be presented with evidence that has minimal probative value but which

may improperly imply that because Bonjo and Martin pled guilty, Lukesh and Universal are also guilty.6

C.

Having considered the probative value of Bonjo and Martin's guilty pleas, we must next assess the danger of unfair prejudice associated with admitting their guilty pleas into evidence. As the majority acknowledges, and as we have previously noted, "[t]he guilty plea to a conspiracy charge carries with it more potential harm to the defendant on trial because the crime by definition requires the participation of another." United States v. Gullo, 502 F.2d 759, 761 (3d Cir. 1974). It is true that the defendants were convicted of mail fraud and not of conspiracy. Nevertheless, the offense of conviction, as it was presented at trial, in many respects was similar to a conspiracy. In order to obtain a mail fraud conviction under 18 U.S.C. S 1341, the government must prove that the defendant devised a scheme to defraud, that the defendant participated in the scheme with the specific intent to defraud and that the defendant could reasonably foresee use of the mails. See United States v. Feola, 420 U.S. 671, 693 (1975); Pereira v. United States, 347 U.S. 1, 8 (1954); United States v. Pflaumer, 774 F.2d 1224, 1233 (3d Cir. 1985). As the scheme to defraud was described in the indictment and presented at trial, defendants, including Lukesh, Universal, and Bonjo, participated together in the scheme to defraud and obtain money from the Medicare program. Indeed, it would appear that the government could have elected to indict the defendants on a conspiracy count as well as on the substantive mail fraud counts.

I find, however, that the majority trivializes the heightened danger of unfair prejudice presented by this type of situation, a situation that requires closer scrutiny of the Rule 403 balance. See Majority Opinion at 20. In the context of this case, the majority's characterization of the offense to which Bonjo and Martin pleaded guilty as a

_____

6. will deal further with two other aspects of the probative value of the guilty pleas in my discussion of Rule 608 in Section IV and of limiting instructions in Section V.

"substantive count[ ]" while legally accurate, is also misleading. In the case of Universal and Lukesh, section 1341 criminalized what was essentially a successful conspiracy to commit Medicare fraud. In fact, the jury found that Lukesh and Universal had devised a scheme to defraud Medicare by fraudulently re-writing and altering patient evaluations to increase the likelihood that Medicare would reimburse Universal for medical services that were not otherwise reimbursable. Bonjo and Martin pled guilty to participating in this scheme. Ultimately, on the facts before us, the distinction that the majority attempts to draw, between the "substantive" count of mail fraud under section 1341 and the "non-substantive" count of conspiracy to commit mail fraud under section 371, is a distinction without a difference. Thus, the danger of unfair prejudice associated with the District Court's decision to admit Bonjo and Martin's guilty pleas into evidence is not only significant but also virtually identical to the danger of unfair prejudice associated with admitting into evidence the guilty pleas of two alleged co-conspirators.

D.

Having considered both the probative value of and the danger of unfair prejudice associated with Bonjo and Martin's guilty pleas, we must next determine whether the probative value of these guilty pleas is substantially outweighed by the danger of unfair prejudice to the defendants. The probative value of Bonjo and Martin's guilty pleas is negligible--the defendants agreed not to "raise the guilty plea/plea agreements on cross examination nor [ ] to raise any inference on which the accomplices' pleas of guilty would be admissible to rebut." The principal effect of this agreement is a reduction in the probative value of this evidence. On the flip side, the danger of unfair prejudice associated with Bonjo and Martin's guilty pleas is significant--mail fraud, as a matter of law, involves a scheme or artifice to defraud, and Bonjo and Martin allegedly participated in this scheme with and under the direction of Universal and Lukesh. Thus, if Bonjo and Martin's admission that they committed mail fraud is believed, it is difficult not to conclude that Universal and

14

Lukesh committed mail fraud as well. As we noted in Toner, "[a] defendant ha[s] a right to have his guilt or innocence determined by the evidence presented against him, not by what has happened with regard to a criminal prosecution against someone else." Toner, 173 F.2d at 142. Clearly, Bonjo and Martin's guilty pleas create a significant danger of unfair prejudice. This significant danger of unfair prejudice substantially outweighs the minimal probative

value of Bonjo and Martin's guilty pleas. For that reason, Federal Rule of Evidence 403 mandates that their guilty pleas be excluded. Thus, the District Court's decision to admit Bonjo and Martin's guilty pleas into evidence was an abuse of discretion.

III.

By concluding that Bonjo and Martin's guilty pleas were properly admitted into evidence, and by endorsing the holding in Gaev, the majority ignores the fact that, over time, Toner and its progeny have come to stand for the proposition that guilty pleas of co-conspirators are not admissible to establish the guilt of the defendant and can only be introduced into evidence for a proper evidentiary purpose. See, e.g., United States v. Gambino, 926 F.2d 1355, 1363 (3d Cir. 1991); Werme, 939 F.2d at 113-14; Mujahid, 990 F.2d at 115. Following the majority's reasoning, unless a defendant is willing to refrain from cross-examining a witness entirely, the witness's credibility will always be at issue, and his or her guilty plea will always be admissible. While this may be the rule of law in other circuits, it is definitely not the rule of law in the Third Circuit. Compare, e.g., United States v. Mealy, 851 F.2d 890, 899 (7th Cir. 1988) ("The well established rule in this circuit is that, on direct examination, the prosecutor may elicit direct testimony regarding the witness's plea agreement and actually introduce the plea agreement into evidence.") with Gambino, 926 F.2d at 1363 (holding that an alleged co-conspirator's guilty plea can be admitted into evidence only for a proper evidentiary purpose). The majority's holding effectively overrules Toner  and its

15

progeny without acknowledging this fact or providing a reason for doing so.7

The majority apparently concludes that Toner stands for the proposition that an alleged co-conspirator's guilty plea cannot be offered as proof of the defendant's guilt; therefore, when an alleged co-conspirator's guilty plea is admitted into evidence, the jury must be instructed that the guilty plea cannot be used to establish the guilt of the defendant. While this may be a proper interpretation of Toner read alone, subsequent cases in the Third Circuit have recognized that, absent a proper purpose, guilty pleas of an alleged co-conspirator are inadmissible. Framed in terms of the balancing approach required by Federal Rule of Evidence 403, absent a proper purpose, the probative value of an alleged co-conspirator's guilty plea is substantially outweighed by the danger of unfair prejudice to the defendants.

In light of our established precedent, I believe that the trial court in Universal erred by admitting into evidence the guilty pleas of two alleged co-schemers in face of the defendants' commitment that they would not, on cross-examination, challenge the credibility of the government's witnesses or raise any inferences that would make the guilty pleas admissible. Absent a proper evidentiary purpose, a trial court's decision to admit an alleged co-conspirator's guilty plea is improper and an abuse of

_____

7. The majority is quick to focus on the following statement in Gaev: "While plea agreements have often been admitted in response to actual or anticipated attacks on a witness's credibility, an attack is not always necessary to justify their introduction," Gaev, 24 F.3d at 477–78. To support this proposition, the Gaev Court cites the following passage in Gambino: "In this case, the defendants began their attack on the credibility of the government's witnesses in their opening statement. Yet, even in the absence of this attack, the [introduction of the witnesses' guilty pleas] was proper here." Gambino , 926 F.2d at 1363. This statement, which is clearly dictum, is made without any supporting cite to case law in the Third Circuit or any other circuit. Such a statement is without support or foundation in Third Circuit jurisprudence, and since it is merely dictum, it alone should not provide the basis for affirming the District Court's decision to admit Bonjo and Martin's guilty pleas into evidence.

16

discretion. An alleged co-conspirator's guilty plea cannot be admitted for the purpose of proving a defendant's guilt. See Cohen, 171 F.3d at 801 ("[T]he plea agreements of co-conspirators are not admissible to prove the defendant's guilt."); Gaev, 24 F.3d at 476 ("It is well established that the plea agreements of co-conspirators cannot be used as evidence of a defendant's guilt."); Mujahid , 990 F.2d at 115 ("It is well-established that a co-defendant's guilty plea is not admissible to prove the defendant's guilt."); Werme, 939 F.2d at 113 ("We have long recognized that evidence of another party's guilty plea is not admissible to prove the defendant's guilt."). Contrary to the majority's claim that "Federal Rule of Evidence 403 creates a presumption of admissibility," an alleged co-conspirator's guilty plea is only admissible for a limited number of valid, permissible purposes. See United States v. Inadi, 790 F.2d 383, 384 n.2 (3d Cir. 1986) ("[A co-conspirator's guilty plea may be admitted] in order to rebut defense counsel's persistent attempts on cross-examination to raise an inference that the co-conspirators had not been prosecuted and that[the defendant] was being singled out for prosecution."); Gambino, 926 F.2d at 1364 ("[A co-conspirator's guilty plea may be admitted] on direct examination [in order] to

dampen subsequent attacks on credibility, and to foreclose any suggestion that the party producing the witness was concealing evidence."); Werme, 939 F.2d at 114 ("[A witness's guilty plea may be admitted] to rebut the defense assertion that [the witness] was acting as a government agent when he engaged in the activities that formed the basis for [his guilty] plea.").

As our analysis above demonstrates, when a defendant agrees not to "raise the guilty plea/plea agreements on cross examination nor to raise any inference on which the accomplices' pleas of guilty would be admissible to rebut," the Rule 403 balance clearly tips in favor of excluding the evidence.8 If an alleged co-conspirator's guilty plea is to be

_____

8. As discussed below, the jury's verdict confirms that the defendants were in fact prejudiced by the District Court's erroneous evidentiary ruling. See infra Section VI. I note moreover that if a defendant reneges on a commitment not to impeach a witness's credibility on the basis of the guilty plea, the government will have the opportunity to introduce the guilty plea on rebuttal.

17

admissible at all, it must be admissible for some purpose other than proving the defendant's guilt. See Cohen, 171 F.3d at 801 (holding that an alleged co-conspirator's plea agreement is admissible for "some purposes"); Gaev, 24 F.3d at 476 (holding that an alleged co-conspirator's guilty plea is admissible for "some valid purpose[s]"); United States v. Thomas, 998 F.2d 1202, 1205 (3d Cir. 1993) (holding that an alleged co-conspirator's guilty plea is admissible for "limited purposes"); Mujahid, 990 F.2d at 115 (holding that an alleged co-conspirator's guilty plea is admissible for "other[ ] permissible purposes"); Werme, 939 F.2d at 113 (holding that another party's guilty plea is admissible for "other[ ] permissible purposes"); United States v. Gambino, 926 F.2d 1355, 1363 (3d Cir. 1991) (holding that an alleged co-conspirator's guilty plea is admissible for "some valid purpose[s]"). Allowing the government, when prosecuting a criminal case, to introduce the guilty plea of a defendant's alleged co-conspirator simply by claiming that the guilty plea must be admitted into evidence so that the jury can assess the witness's credibility creates an exception that swallows the rule. The government will always be able to claim that a witness's guilty plea must be admitted into evidence so that the jury can assess the witness's credibility, and thus the guilty plea will always be admissible. It is impossible to reconcile this result with our prior jurisprudence or with the result mandated by Rule 403.

IV.

Focusing primarily on the jury's need to assess the credibility of Bonjo and Martin, and relying on a statement in Gaev and cases in other circuits, the majority concludes that the government may seek to introduce a witness's guilty plea even in the absence of a challenge to the witness's credibility. The majority's holding deviates not only from the outcome mandated by Rule 403, its holding is at odds with Federal Rule of Evidence 608(a) and (b). Rule 608(a) states:

> The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the

18

> evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

Arguably, under Rule 608(a), absent an attack on Bonjo and Martin's credibility, their guilty pleas are inadmissible. The Advisory Committee Notes to Rule 608(a), which summarize the policy behind the rule, indicate:

> Character evidence in support of credibility is admissible under the rule only after the witness' character has first been attacked, as has been the case at common law. Maguire, Weinstein, et al., Cases on Evidence 295 (5th ed. 1965); McCormick S 49, p. 105; 4 Wigmore S 1104. The enormous needless consumption of time which a contrary practice would entail justifies the limitation.

Thus, even prior to the enactment of Rule 608(a), as a matter of common law, evidence was admissible to bolster a witness's credibility only after the witness's credibility had been attacked. See, e.g., Perkins v. United States, 315 F.2d 120, 123 (9th Cir. 1963) (highlighting "the general rule that until the credibility of a witness has been attacked by evidence pertaining to credibility, evidence tending to establish credibility is inadmissible") (citing Homan v. United States, 279 F.2d 767, 772 (8th Cir. 1960)).

Not only is the majority's holding contrary to Rule 608(a), its holding is also at odds with Rule 608(b). Rule 608(b) states:

> Specific instances of the conduct of a witness, for the

purpose of attacking or supporting the witness'
credibility, other than conviction of crime as provided
in Rule 609, may not be proved by extrinsic evidence.
They may, however, in the discretion of the court, if
probative of truthfulness or untruthfulness, be
inquired into on cross-examination of the witness (1)
concerning the witness' character for truthfulness or
untruthfulness, or (2) concerning the character for
truthfulness or untruthfulness of another witness as to

19

which character the witness being cross-examined has
testified.

Because Bonjo and Martin's guilty pleas (or more

specifically their decision to plead guilty) could be
considered conduct under Rule 608(b), to the extent that
the government introduced Bonjo and Martin's guilty pleas
to support their credibility, their admission is barred, as a
matter of law, by Rule 608(b). See Fed. R. Evid. 608(b); cf.,
e.g., United States v. Anderson, 859 F.2d 1171, 1178 (3d
Cir. 1988) ("To the extent that [the probation officer's]
testimony was an attempt to attack [the witness's]
credibility by extrinsic evidence, it is strictly prohibited by
Federal Rule of Evidence 608(b).").9  Indeed, the government
argued in its briefs and during oral argument that Bonjo
and Martin's guilty pleas should be admitted into evidence
in order better to allow the jury to assess their credibility.
Certainly, since Bonjo and Martin were government
witnesses, their guilty pleas were not being introduced into
evidence to attack their credibility but rather to bolster it.

Consequently, the majority's conclusion that Bonjo and
Martin's guilty pleas were properly admitted into evidence is
not only contrary to the result mandated under Federal
Rule of Evidence 403 but also is at odds with the Federal
Rule of Evidence 608.10

_____

9. Extrinsic evidence under Rule 608(b) is admissible for purposes other
than supporting or attacking a witness's credibility. See, e.g., Lamborn
v.

Dittmer, 873 F.2d 522, 528 (2d Cir. 1989) ("[Rule 608] is inapplicable in
determining the admissibility of evidence introduced to impeach a
witness's testimony as to a material issue."). While the majority
concludes that Bonjo and Martin's guilty pleas are admissible for
purposes other than evaluating their credibility, i.e., avoiding the
appearance of selective prosecution and establishing a basis for the
witness's knowledge of the crime, that the guilty pleas were admitted to
allow the jury to evaluate the witnesses' credibility is the cornerstone
of

the majority's holding.

10. As the majority points out, it is arguable whether Federal Rule of Evidence 608 governs the admission of Bonjo and Martin's guilty pleas. See supra Majority Opinion at 17–18, note 13. However, even if one were to conclude that Rule 608 does not govern the admission of Bonjo and Martin's guilty pleas, it is clear that Rule 608 provides insight into the appropriate balancing required under Rule 403. Specifically, Rule 608

20

V.

While the majority's conclusion, that the District Court did not abuse its discretion by admitting into evidence Bonjo and Martin's guilty pleas, is disturbing, equally disturbing is the majority's conclusion that "the detailed limiting instructions provided by the District Court cured the prejudicial effect, if any, flowing from the introduction of Bonjo and Martin's guilty pleas and plea agreements." Majority Opinion at 20.

_____

allows a party to introduce "evidence in the form of opinion or reputation" to attack or support the credibility of a witness only after the credibility of the witness has been attacked. The majority contends that Bonjo and Martin's guilty pleas are admissible to bolster their credibility

despite the defendants' agreement not to attack Bonjo and Martin's credibility. This contention is at odds with the framework set forth in Rule 608. To admit Bonjo and Martin's guilty pleas, absent a prior attack on their credibility, when similar evidence would, as a matter of law, be admissible under Rule 608 only after a testifying witness's credibility had

been attacked, undermines the majority's entire Rule 403 analysis.

Moreover, the majority's analysis of United States v. Old Chief is also at odds with the framework set forth in Rule 608. In arguing that the introduction of Bonjo and Martin's guilty pleas has less probative value than the defendants' agreement not to mention the guilty pleas on cross-examination or to raise any inference which these guilty pleas might rebut, the majority overlooks the fact that "evidence in the form of opinion or reputation" is admissible only after the credibility of a witness has been attacked. See Majority Opinion at 16. Thus, under Rule 608, the comparison of probative value required under Old Chief and alluded to by the majority would be purely hypothetical and unnecessary; absent a prior attack on credibility, "evidence in the form of opinion or reputation" is, as a matter of law, inadmissible.

Finally, contrary to the majority's suggestion, the potential applicability of Rule 608 was not only discussed at the en banc oral argument, the government filed a supplemental brief after oral argument to address the issue. See Supplemental Brief of Appellee United States of America, Filed November 22, 1999 ("At oral argument before the en banc Court on November 8, 1999, the Court raised two issues which had not previously been addressed in this appeal: (1) The relevance of Rule 608 of the Federal Rules of Evidence; and (2) the applicability of Luce v. United States, 469 U.S. 38 (1984).").

It is beyond dispute that when an alleged co-conspirator's guilty plea is admitted into evidence, even if the trial court has given a proper cautionary instruction to the jury, the prejudice to the defendant may be serious enough to constitute reversible error. See, e.g., Thomas, 998 F.2d at 1206 ("In the absence of a proper purpose for the admission of the guilty pleas, the curative instructions of the district court were not sufficient to remove the prejudice to Thomas presented by the evidence of his co-conspirators' guilty pleas."); Gaev, 24 F.3d at 478 ("There may also be cases where the inference of guilt from the co-conspirator's plea agreement is sufficiently strong that even limiting instructions will not effectively contain it."). The majority not only concludes that this prejudicial effect is typically cured by a limiting instruction to the jury but also dismisses the defendants' contention that juries cannot comprehend or follow such limiting instructions.

Moreover, the majority's analysis obscures what I consider to be the key issue: The District Court abused its discretion by admitting into evidence Martin and Bonjo's guilty pleas, over the defendants' objection, despite the fact the defendants agreed not to "raise the guilty plea/plea agreements on cross examination nor [ ] to raise any inference on which the accomplices' pleas of guilty would be admissible to rebut." While a limiting instruction given by a District Court may render an otherwise erroneous evidentiary ruling harmless, a limiting instruction cannot transform an otherwise erroneous evidentiary ruling into a legally proper evidentiary ruling. Ultimately, we must decide whether, the District Court, at the time it ruled on the defendants' motion in limine, abused its discretion by admitting Bonjo and Martin's guilty pleas into evidence. To do so, we must focus on the probative value and  danger of unfair prejudice associated with Bonjo and Martin's guilty pleas and not on whether the District Court's limiting instructions cured any resulting, unfair prejudice.

Moreover, the danger of unfair prejudice highlighted above renders both baffling and confounding the District

Court's decision to instruct the jury "that it may not consider the guilty plea and/or plea agreement as evidence that the defendant is guilty of the offenses with which he is

22

charged," rather than to instruct the jury that it need not concern itself with the possibility of selective prosecution or what the witnesses have be promised in return for their testimony. See, e.g., Thomas, 998 F.2d at 1205. If, as the majority contends, juries comprehend and follow limiting instructions such as those given by the District Court in this case, surely the better approach, and the one most consistent with Third Circuit jurisprudence, is to exclude Bonjo and Martin's guilty pleas and to instruct the jury members that they should concern themselves only with the guilt or innocence of defendants and not with the possibility of selective prosecution or the involvement of any other persons in any alleged scheme. See supra , Majority Opinion at 17-18, note 13; Thomas, 998 F.2d at 1205; cf. Spencer v. Texas, 365 U.S. 554, 562-63 (1967) ("[T]his type of prejudicial effect is acknowledged to inhere in criminal practice, but it is justified on the grounds that . . . the jury is expected to follow instructions in limiting this evidence to its proper function."). Instead of following our holding in Thomas, the majority relies on precedent in other circuits, citing one case from the Fifth Circuit and one case from the Eleventh Circuit, to support its conclusion that Bonjo and Martin's guilty pleas are presumptively admissible. See Majority Opinion at 12.11 Ultimately, the majority's conclusion that Federal Rule of Evidence 403 "creates a presumption of admissibility" with respect to an alleged accomplice's guilty plea, a conclusion that is crucial to the majority's holding, is unsupported by Third Circuit precedent.12

_____

11. The Eleventh Circuit case that the majority cites, Hendrix v. Raybestos-Manhattan, Inc., 776 F.2d 1492 (11th Cir. 1985), is a civil tort case. Arguably, there exists a heightened concern associated with the "danger of unfair prejudice" in the context of a criminal case.

12. The majority attempts to draw support for its holding from a recent Supreme Court case, United States v. Old Chief , 519 U.S. 172 (1997). In Old Chief, the Supreme Court held that a trial court abuses its discretion when, in a prosecution pursuant to 18 U.S.C. S 922(g)(1) for possession of a handgun by a convicted felon, it admits into evidence the name or nature of the defendant's prior conviction despite the defendant's offer to

stipulate to his status as a felon under section 922(g)(1). See id. at 190-

91. While the issue addressed in Old Chief is not entirely unrelated to the issue presented in this case, a careful reading of Old Chief confirms that it provides no support to either the majority or the dissent in this case.

23

## VI.

Although the District Court abused its discretion by admitting into evidence Bonjo and Martin's guilty pleas, I must also consider whether its evidentiary ruling amounts to harmless error. See, e.g., United States v. Werme, 939 F.2d at 111 ("We also conclude that it was harmless error to introduce the [witnesses'] guilty pleas."). An error at trial is harmless if an appellate court concludes that there is a "high probability" that the error did not affect the defendant's substantial rights. Id. at 116-17. Phrased differently, an appellate court must have "a sure conviction that the error did not prejudice the defendant, but need not disprove every reasonably possibility of prejudice" to conclude that the error was harmless. United States v. Jannotti, 729 F.2d 213, 219-20 (3d Cir. 1984).

Reviewing the record, it is clear that the District Court's erroneous evidentiary ruling was not harmless error. Of the thirty-nine counts that the defendants were charged with, they were acquitted on thirty-eight counts and were convicted on only one count, the count to which government witness Judy Blum Bonjo pleaded guilty. Further suggesting the likelihood of prejudice, the count on which the defendants were convicted involved a patient named Mildred Hynes, but Mildred Hynes was involved in four other counts on which the defendants were acquitted. Lastly, and perhaps most importantly, discarding Bonjo's and Martin's guilty pleas, the evidence against the defendants on Counts Two through Thirty-Nine was virtually identical to the evidence presented on the single count which the defendants were convicted. In light of these facts, I believe that the error here could not be harmless.

## VII.

For the above reasons, I would reverse the defendants' convictions and remand the case to the District Court for a new trial.

24

BECKER, Chief Judge, dissenting:

I am in full agreement with the reasoning and conclusion expressed by the principal dissent in this case--which would hold that the District Court erred in admitting evidence that the defendants' co-conspirators had entered guilty pleas for their respective roles in the underlying health-care fraud conspiracy--except insofar as that opinion disclaims reliance on Old Chief v. United States, 519 U.S. 172 (1997). See Dissent at 29 n.12 (Roth, J.). I am of the opinion that Old Chief strongly supports the defendants' position, and write separately to explain that view.

I read Old Chief as standing for three important propositions: First, it makes clear that defense stipulations, such as the assurances offered by the defendants in this case, are acceptable, if not favored or required, in certain limited circumstances. See Old Chief, 519 U.S. at 190-92. Second, it holds that the government's general prerogative to prosecute its case as it sees fit must necessarily yield to the dictates of the Federal Rules of Evidence. See id. at 191. Third, it tracks the advisory committee notes to the Federal Rules of Evidence, and confirms that proffered evidence must not be analyzed as an island to itself (as the majority seems to do, here), but rather, compared to the availability of other means of proof on the same point. See id. at 184. Against this background, I believe that the case for allowing a stipulation in this case is even stronger than it was in Old Chief.

In Old Chief, the defendant, charged with being a felon in possession of a firearm, had offered to stipulate to an element of the offense with which he was charged: having a prior felony conviction. The government refused to accept the offer, and over the defendant's objection, it introduced evidence regarding the name and nature of the defendant's underlying felony conviction. The Supreme Court held that the district court had abused its discretion in admitting the evidence of the underlying conviction. The Court held that the defendant's stipulation should have been received and that the government's introduction of evidence should have been limited, notwithstanding the government's general prerogative to choose its own evidence. See 519 U.S. at

1

190. The Court reasoned that it was proper to allow such a stipulation because the evidence regarding the name and nature of the prior felony conviction (assault causing serious bodily injury) failed the Rule 403 balancing test.

Although the name and nature of the offense were certainly relevant to prove that the defendant had been convicted of a felony, see id. at 178-79, the defendant's

offered stipulation was more probative evidence--in fact, it was conclusive evidence--that the element was established. See id. at 186, 190. The evidence regarding the name of the offense and the nature of the crime was therefore rendered surplusage, as it was less conclusive proof of the element, see id. at 186, and as it was neither necessary to help the government create a cohesive narrative about the crime charged, see id. 190-92, nor "proper nourishment for the jurors' sense of obligation to vindicate the public interest," id. at 190.

The evidence regarding the name of the offense and the nature of the crime was also problematic because it posed a greater risk of undue prejudice than did the stipulation and an accompanying jury instruction. See id. at 191-92. Evidence of the prior conviction could be used by the jury to draw an improper character inference or could lead the jury to believe that the defendant was a bad person, deserving of punishment whether he was guilty or not. See id. at 181. Therefore, the Court held that the defendant's offered stipulation should have been admitted, and the jury appropriately instructed on this issue. See id. at 192.

Here, the defendants offered to stipulate to a collateral matter--the content of their cross-examination--rather than an element of the offense that the government had the burden to prove beyond a reasonable doubt. The defendants promised that they would not assert a selective prosecution defense, and that they would not impeach the co-conspirators on the ground that they were biased because they had entered guilty pleas. The government has argued that it had the right to introduce evidence of the guilty pleas, even though the defendants promised not to pursue these lines of cross-examination, because jurors might independently reach the conclusion that the government had engaged in selective prosecution or that

2

the co-conspirators were biased and were unduly shifting blame to the defendants.

The evidence that the government proffered--the co-conspirators' guilty pleas--was surely relevant as tending to allay these juror concerns. See Old Chief, 519 U.S. at 188-89. But, given the context of the case, and when compared to alternative means of addressing those concerns, the government's introduction of the guilty pleas, as with the government proffer in Old Chief, fails the Rule 403 balancing test. Once the defendants offered their stipulation, the probative value of the guilty pleas was greatly reduced: They no longer affirmatively rebutted a selective prosecution defense, and they no longer could be

used to dampen subsequent attacks on credibility, as those attacks were no longer coming.

Moreover, the guilty pleas were not a necessary part of the "coherent narrative" of the case, a factor that would normally militate in favor of the government's position. Old Chief, 502 U.S. at 192. United States v. Toner's general rule makes clear that co-conspirators' guilty pleas are normally inadmissible, see 173 F.2d 140, 142 (3d Cir. 1949); hence it follows that such evidence need not necessarily be part of the government's case in chief. Given the defendants' stipulation, the guilty pleas' only probative force was their tendency to allay hypothesized suspicions in the minds of the jurors about why the government had chosen to prosecute the defendants, and about the credibility of witnesses who had participated in criminal activity with the defendants, but were not facing prosecution.

As Judge Roth ably demonstrates, the danger of unfair prejudice inherent in this evidence is great. The jurors could infer from the co-conspirators' guilty pleas that the defendants must also be guilty if their co-conspirators were willing to plead guilty to such crimes. As in Old Chief, where the fear was that the name and nature of the defendant's underlying felony conviction could mislead or over-persuade jurors by "lur[ing]" them to engage in a "sequence of bad character reasoning," Old Chief, 519 U.S. at 185, the evidence of the co-conspirators' guilty pleas carried with it the potential to deprive the defendants of

3

their right to "stand or fall with the proof of the charge made against him," Toner, 173 F.2d at 142.

When compared to the alternative way in which the jurors' suspicions about co-conspirators' guilty pleas could have been allayed, it is clear that, as in Old Chief, the defendants' stipulation should have been accepted. As Judge Roth points out, the District Court could have instructed the jury that it should not concern itself with selective prosecution or what the co-conspirators were promised in return for their testimony. Instead, the District Court allowed the pleas to come into evidence and then gave a "Toner instruction" admonishing the jurors that they could not infer from the co-conspirators' guilty pleas that the defendants were also guilty.

When one compares the probative value and danger of unfair prejudice inherent in these two scenarios, the former far better comports with the dictates of Rule 403 and the Court's admonitions in Old Chief. Judge Roth's suggested mode of presentation takes less time and is more direct. In

her suggested mode of presentation, the judge makes definitively clear to the jury that selective prosecution and claims of bias are not at issue. Under Judge Roth's theory, the danger of the impermissible Toner inference is avoided because the guilty pleas are not introduced. Lastly, and perhaps most importantly, this mode of presentation does not interfere with the government's ability to present a "coherent narrative" regarding its case. Old Chief, 502 U.S. at 192. If anything, it forecloses the possibility that the jury will focus on a tangential and unimportant parts of the criminal "plot," and it does so without depriving the jury of facts crucial to its understanding of the defendants' criminal conspiracy. The defendants' co-conspirators testified at length regarding the defendants' myriad acts of health care fraud; understanding the means by which the defendants' allegedly defrauded the government was in no way contingent upon the knowledge that the defendants' co-conspirators pled guilty—they testified that they had witnessed these crimes first hand.

In contrast, the mode of presentation endorsed by the majority is far more circuitous and confusing because it addresses only a potential concern the jurors may have. The

4

fact that the government elicits testimony regarding the guilty pleas does not mean that the jury will not conclude that selective prosecution or blame shifting were at issue. Additionally, the impermissible Toner inference could still be made, notwithstanding the instruction that jurors must not draw the inference.

The majority attempts to bolster its position by stating that the defendants' offer "to refrain from affirmatively challenging [their co-conspirators'] credibility did not, and could not, carry the same probative value on the issue of witness credibility as the introduction of [their] pleas." Majority at 16. To me, at least, this argument makes no sense. If, complying with their offered stipulation, the defendants do not challenge their co-conspirators' credibility and the District Court instructs the jury not to infer that the co-conspirators are biased, their credibility on this point is unimpeached. There is no need for evidence, probative or not, on this point. The majority, instead, would have the government bolster the co-conspirators' credibility before it is challenged with probative evidence—in contradiction to the admonitions in Rule 608, as Judge Roth points out—and then invite the defendants to attack the witnesses' credibility on this issue. This takes far more time, is more likely to confuse the jury, and puts at issue a point, tangential to the trial, when it clearly need not be, especially when it carries with it the twin dangers of unfair

prejudice. The Federal Rules of Evidence are grounded in truth, economy, and fairness, see Fed. R. Evid. 102; the majority's approach seems to ignore these aspirations.

As in Old Chief, rather than present the jury with potentially unfairly prejudicial evidence and then instruct against an improper inference, the correct thing to do in this case was to accept the defendants' stipulation and then to instruct the jury as to how to deal with the stipulation properly. In Old Chief, that meant making sure that the jury understood what the stipulation meant: that the government had definitively satisfied the felony status element in its felon-in-possession-of-a-firearm prosecution. Here, it should have meant instructing the jury that the defendants would not be asserting a selective prosecution defense or that the co-conspirator witnesses were

5

attempting to receive a sweetheart deal by shifting blame to the defendants. In not proceeding in this manner, I agree with my fellow dissenters' conclusion that the District Court, as did the district court in Old Chief , abused its discretion.

6

SLOVITER, Circuit Judge, dissenting.

I join Judge Roth's persuasive dissent. I write separately because I joined the opinion in United States v. Gaev, 24 F.3d 473 (3d Cir. 1994), an opinion on which the majority relies and with which Judge Roth takes issue.

As the majority correctly notes, our precedent on the issue of the admissibility of a witnesses's guilty plea does not always follow a consistent line. The en banc procedure provides us with a valuable opportunity to reconsider our positions on important issues such as that presented here.

I begin with the proposition that the Federal Rules of Evidence do not provide a hard and fast rule covering the situation before us today. Instead, the question of whether to admit evidence of a co-conspirator witness's guilty plea in the trial of his or her alleged confederate must be subjected to the balancing required by Fed. R. Evid. 403. In Gaev, we emphasized that the "standard remains that of Federal Rule of Evidence Procedure 403" and recognized that "[t]here may . . . be cases where the inference of guilt from the co-conspirator's plea agreement is sufficiently strong that even limiting instructions will not effectively contain it." Gaev, 24 F.3d at 478.

I dissent from the majority's position because I view its analysis as permitting the government to introduce evidence of a co-conspirator witness's guilty plea in all cases, as long as the district court provides a curative instruction to the jury. This is inconsistent with the principle established in this circuit that a witness's guilty plea cannot be used as evidence of the defendant's guilt. See United States v. Cohen, 171 F.3d 796, 801 (3d Cir. 1999); United States v. Gaev, 24 F.3d 473, 476 (3d Cir. 1994); United States v. Thomas, 998 F.2d 1202, 1206 (3d Cir. 1993); Government of the Virgin Islands v. Mujahid, 990 F.2d 111, 115 (3d Cir. 1993); United States v. Werme, 939 F.2d 108, 113 (3d Cir. 1991); United States v. Toner, 173 F.2d 140, 142 (3d Cir. 1949). The majority's holding that a guilty plea is admissible to permit the jury to assess the credibility of the witness, even in the absence of an attack on the witness's credibility, or to dispel jury concern about selective prosecution, even if the defendant has not so

contended, transmutes a case-by-case analysis under Fed. R. Evid. 403 into a general rule of admissibility. I see no justification for such a rule.[1]

_____

1. It is significant that defendants here did not contest the acts on which

the prosecution is based, whereas in Gaev the defendant "challenged critical aspects of Gaev's participation in the activities that formed the basis of Gaev's conviction." Gaev, 24 F. 3d at 478.

RENDELL, Circuit Judge, dissenting:

I am pleased to join in my colleague's excellent dissenting opinion, and I write separately only to go one step further than she did with respect to the application of the Rule 403 balancing test. I submit that the probative value of a guilty plea is not just negligible, but nil. At the same time, given the unique setting of this case, there is not merely a danger of prejudice, but the prejudice is obvious and real.

The majority seems to be saying that relevance is equated to whatever the jury might like to know, which I believe is precisely how the District Court viewed the issue. How is our ruling any different from letting the prosecution introduce a witness's Boy Scout badges and lie detector results on direct examination because a jury may wonder if

the witness is telling the truth? Why should we concern ourselves that the jury may wonder about credibility and selective prosecution? What relevance do they have to the government's case? I submit that they have absolutely none.

Even if credibility and selective prosecution were somehow relevant to the government's case, the prosecution could satisfy the jury's curiosity as to these issues just as easily by engaging in the following exchange with the witness:

> Question: Are you being prosecuted by the government?
>
> (Response: Yes.)
>
> Question: Have you admitted that you were involved in the events about which you are testifying?
>
> (Response: Yes.)

This line of questioning addresses credibility and selective prosecution while it leaves open the crucial question of guilt of the offense charged, which is the most dangerous aspect of the admissibility of a guilty plea in this unique setting. Under the facts of this case, the defendants do not deny that they participated in the same conduct as the witness. They contend, however, that this conduct was

1

not a crime. When another participant testifies that she admitted her guilt of the offense, she not only tells the jury that "what we did is a crime," but she also says "I owned up to it; why won't the defendants? Why are they putting you through a trial when we are guilty?" The probable prejudice in a case such as this is immense and far outweighs the relevance, especially because the relevance, I submit, is illusory.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

2